The State v. Myers.

THE STATE v. MYERS, *Appellant.*

1. **Pleading, Criminal**: INDICTMENT: FRAUD; OWNERSHIP: VARIANCE. An indictment under Revised Statutes, section 1561, for obtaining property by means of a trick and fraud, should charge it to belong to the true owner.. But a variance in this particular upon the trial will not, under the statute, (R. S., § 1820,) be fatal, unless the trial court shall find it to be material to the merits of the case, or prejudicial to the defense of the defendant.

2. **Practice, Criminal**: EVIDENCE: INTENT. In a prosecution under Revised Statutes, section 1561, for obtaining property by means of a trick and fraud, acts of the defendant similar to the one for which he is being tried, committed on the same day and in the same town, are admissible against him for the purpose of showing the intent with which the act was done.

*Appeal from Jasper Circuit Court.*—HON. M. G. McGREGOR, Judge.

AFFIRMED.

*A. L. Thomas* for appellant.

*D. H. McIntyre,* Attorney General, for the State.

Evidence of other like attempts was admissible to show the intent with which the act was done. Wharton Crim. Ev., (8 Ed.) § 31, *et seq.;* 3 Greenleaf Ev., (14 Ed.) § 15. Such evidence has been admitted in like cases. *Comm. v. Coe.,* 115 Mass. 481; 1 Cen. Law Jour. 481; *Comm. v. Stone,* 4 Met. 43; *Bainbridge v. State,* 30 Ohio St. 264; *Gassenheimer v. State,* 52 Ala. 313. The clerk had a special property in the money. Larceny could have been committed of it in his hands, and so could the offense charged. 1 Wharton Crim. Law, (8 Ed.) §§ 932a, 938; *Comm. v. Butts,* 124 Mass. 449; *State v. Nelson,* 11 Nev. 334.

PHILIPS, C.—The defendant was indicted under section 1561, Revised Statutes 1879, for an attempt by trick and fraud, to obtain from one P. K. Beard, the sum of $1, the property of said Beard. He was found guilty and sentenced to a term of two years in the penitentiary. From that judgment he prosecutes this appeal.

1. At the conclusion of the State's evidence the defendant demurred thereto. The ground of this objection is, that the proof failed to show that said Beard was the owner of the money in question. The evidence was, that Beard was a clerk in the store of Miller and Graves. He was employed by the month. He stated on the trial that the money did not belong to him, but to said Miller and Graves. In their absence he had charge of the money. Whether they were absent from the store at the time of the alleged attempt by defendant does not appear from the evidence.

To constitute a good indictment for larceny at common law the thing stolen must be charged to be the property of the actual owner, or of a person having a special property as bailee, and from whose possession it was stolen. 2 Arch.

C. P. 257. Chitty states the rule thus: "It is a clear maxim of the common law, that where one has only the bare charge or custody of the goods of another, the legal possession remains in the owner, and the party may be guilty of trespass and larceny in fraudulently converting the same to his own use. Thus, a butler may commit larceny of plate in his custody, or a shepherd of sheep. The same of a servant intrusted to sell goods in a shop. This rule appears to hold universally in the case of servants, whose possession of their master's goods by their delivery or permission is the possession of the master himself." While the servant may have the charge he has not the possession of the master's goods; this for the legal reason that the possession of the servant is that of the master. And, therefore, it is well understood and established that the servant may commit larceny by converting to his own use the property entrusted to him. 2 East P. C. 564, 652, 653, 682. In *People v. Call*, 1 Denio 120, the court after announcing the foregoing doctrine, says: "This principle applies to servants, strictly so called, as it also does to apprentices, clerks and workmen of every description, who are employed in the care and management of the owner's property under his immediate supervision and control. See 1 Whart. Cr. L. (8 Ed.) 939. In *Regina v. Green*, 37 Eng. L. & Eq. 597, the prisoner was indicted for stealing two pairs of boots alleged as the property of Rowland Britton. The evidence showed that Rowland was the son of John Britton, the owner of the shop from which the boots were taken by the prisoner. Rowland staid in his father's shop as clerk without hire. In the temporary absence of the father, the son being left in charge of the shop, the goods were taken. On the disclosure of these facts at the trial the crown entered a *nolle*, and at once re-indicted the prisoner for stealing the goods of John Britton. The prisoner to this indictment entered a plea of *autrefois acquit*, based on the former proceeding. On argument before the full bench, the plea was held bad, on the ground that the boy

was not a bailee, but a mere servant. The court said: "The goods remained all the time in the father's possession, and could not have been laid as the property of the son." To the same purport are the cases of *Rex v. Hutchinson, et al.*, Brit. Cr. Cases 412 and *Heygood v. State*, 59 Ala. 49. In the last named case, property in the corn stolen was alleged to be in the superintendent of the plantation, the owner being absent. The court held the superintendent to be the mere servant of the owner of the premises, and discharged the prisoner. "A servant," the court say, "is one who is engaged, not merely in doing work or services for another, but who is *in his service*, usually upon or about the premises or property of his employer, and subject to his direction and control therein, and who is, generally, liable to be dismissed."

Beard was in the strictest sense a servant, the mere clerk of Miller and Graves. He had not the possession of the money in question any more than any article or piece of goods then in the store. Had the prisoner carried off any goods on the counter or shelf, this clerk could not have maintained trespass, trover or replevin therefor. He was not a bailee. The cases to which we have been referred by the State's attorney on examination, are found to range themselves under the head of trustees or special bailees, such as carriers, coach drivers, charged with the duty of transporting and delivering the goods entrusted to them; or cases like that of tailors or shoemakers, to whom goods are delivered to be manufactured for wear. They had a special property interest in them. *State v. Nelson*, 11 Nev. 334. The case of *Comm. v. Butts*, 124 Mass. 449, cited by the State, differs materially from the case at bar. The decision of the court is placed on the ground that the property stolen had "been entrusted to the cashier to be conveyed to the bank; he had a special property in them" (the notes stolen). Besides there was a special statute of the State validating the indictment (Genl. Stat. 1860, Ch. 172, § 12). This statute was enacted presumably, because the previous

36—82

decisions of the Surpeme Court of the State, based on common law rules, held a different way.

The section of the statute under which the indictment, under consideration was drawn in the form prescribed, required the name of the owner of the property to be inserted. This variance would invalidate the conviction had in this case but for. another section of the statute. R. S. 1879, § 1820. " Whenever, on the trial of any felony or misdemeanor, there shall appear to be any variance * * in the ownership of any property named or described therein, such variance shall not be deemed grounds for an acquittal of the defendant, unless the court before which the trial shall be had, shall find that such variance is material to the merits of the case and prejudicial to the defense of the defendant." Under this section, while the variance in question is matter of suggestion and defense for the prisoner, it is for the trial court to determine whether it is material to the merits of the case, and prejudicial to the proper defence of the prisoner. If it appears to the trial judge that the defense has probably been misled by the allegation of ownership of property to his prejudice, it would be the plain duty of the court to give him the benefit of such variance and direct an acquittal. It is to be presumed from the action of the trial court in refusing defendant's demurrer to the evidence, that in the judgment of the court the variance was immaterial, or not prejudicial to the defense. On the facts of record we are not disposed to review the discretion of the trial judge. *State v. Wammack,* 70 Mo. 410; *State v. Barker,* 64 Mo. 283.

II. The action of the trial court in admitting certain evidence is assigned for error. To properly understand this issue it is important to explain the nature of the "trick" by which the defendant is charged to have attempted to obtain money from Beard. Beard's testimony was, that the defendant came into the store and asked for a nickel's worth of tobacco. It was handed to him, and in payment he handed Beard a two dollar bill. Beard returned him a

silver dollar and ninety-five cents in change. Defendant dropped the dollar in silver in his pocket, and said he had found a nickel; and laying it on the counter with the ninety-five cents, said he would rather have a dollar piece for it. Thereupon Beard took from the drawer a silver dollar and laid it down. Whereat the defendant remarked that he believed he would rather have the two dollar bill than the silver, and requested Beard to give it to him and take the two dollars in silver on the counter. Whereat Beard reminded him that he had put the dollar in his pocket, and to hand him that. The prisoner then took up his dollar in change and walked out. The prosecuting attorney then introduced other witnesses, by whom he proved, against the objection of defendant, that on the same day near the same time, both before and after the act in question, in the same village, the defendant attempted the same trick on other clerks, and was heard to say to his companion that he had " knocked them down for a one"—alluding to a house which he had just left; and further stated that " my partner has done the town for $10, and we are getting drunk on the money or over it." The prosecuting attorney stated at the time, that this evidence was introduced for the purpose of showing the *intent* with which the act under investigation was done.

As this presents an important question in the administration of criminal law, about which there is some contrariety of opinion, I have given it much consideration and investigation. It is a general rule that a distinct crime, for which the party might be separately proceeded against, cannot be given in evidence against the prisoner on trial for a single offense. It rests upon the equitable and humane principle that it is unjust to raise a presumption of guilt against the prisoner, on the idea that having committed one offense the moral obliquity or depravity it exhibits makes it probable he would commit another. And as it is difficult to guard against the blunder of the average jury in failing to distinguish the real purpose for which such

evidence is admitted, as against the bad impression it would likely make on them as to the prisoner's general character, it is contended that it would be safer to exclude it under all circumstances. But the rule has its exceptions, now too deeply and firmly settled not to recognize them. They are exceptions founded in as much wisdom and justice as the rule itself. The most generally recognized exception is to admit other similar acts for the purpose of proving the guilty knowledge of the prisoner in cases of indictments for uttering, or having in his possession false notes, bills of exchange, bank bills, instruments for forging the same and counterfeit coin, and recent possession of stolen property. 1 Lead Cr. Cases, 189 ; Ros. Cr. Ev., 90 ; *Com. v. Coe*, 115 Mass. 481 ; *Heard v. State*, 9 Texas App. 1. The exception also extends to admitting other like acts as proof of the *scienter* in obtaining money under false pretenses, as in the instance of falsely representing the bill of an insolvent bank to be good whereby the prisoner fraudulently obtained property. *Com. v. Stone*, 4 Met. 43, 47. So on an indictment for knowingly delivering skimmed milk to a factory, to be manufactured into cheese, with intent to defraud, evidence of transactions of the same character, other than that named in the indictment, has been admitted for the purpose of showing guilty knowledge. *Bainbridge v. State*, 30 Ohio St. 265. In a comparatively recent case, (the *Queen v. Francis*, reported in 1 Cent. L. J. 481,) the prisoner obtained money by pretending that a certain ring contained diamonds, when in fact it was composed only of crystals. To sustain the charge of criminal fraud, evidence was given by the crown that on a prior occasion the prisoner obtained money by falsely representing that a chain only coated with gold was made of pure gold. Lord Coleridge, C. J., who delivered the judgment, said : "It seems clear on principle that when the act charged is proved, and the only remaining question is whether, at the time he did it he had guilty knowledge of the quality of his act, or acted under mistake, evidence of the class received must be admissible.

It tends to show that he was pursuing a course of similar acts, and thereby it raises a presumption that he was not acting under a mistake."

Upon the same reason and by equal authority is the proposition maintainable that the exception to the general rule extends to admitting such proof where the question of intent, the *quo animo*, is material to be established. It stands almost on the same ground as proof of the *scienter*. The English authorities are quite decided in admitting the proof of the character in question. In *Queen v. Dossett*, 2 Cox C. C. 243, the prisoner was indicted for setting fire to a rick. It was fired by the prisoner discharging a gun near it. The prosecution offered evidence to the effect that on the day preceding, the rick was on fire, and the prisoner was then near it with his gun in hand. Maule, J., said : " The mere fact of the evidence going to prove another felony is not sufficient to exclude it, if, in itself, it be good evidence. It is only by the conduct of the prisoner that a judgment can be formed whether the act was accidental or intentional. It is not as evidence of a felony, but as evidence of prisoner's intentions, that it may be received." In *Rex v. Voke*, 1 Rus. & Ry. 531, the prisoner was indicted for maliciously shooting another. The state of the proof being such as to raise some doubt whether the shooting was intentional or accidental, evidence was admitted of a previous attempt on the same day by the prisoner to shoot the party. In *Reg. v. Richardson*, 2 F. & F. 343, the prisoner was indicted for embezzlement. The prisoner in rendering account to his employer made it exceed the sum of his actual expenditures from one to three pounds. For the purpose of showing that the act for which he was indicted was not a mistake, the prosecution introduced evidence of instances both before and after the act in question of similar returns. It was held by all the judges, after the fullest consideration, to be competent. In *Rex v. Hogg*, 4 C. & P. 364; 19 Eng. C. L. 420, the prisoner was indicted for administering sulphuric acid to horses with intent to

kill them.   Evidence that the prisoner had hitherto mixed acid with the horses' corn was admitted by Parke, J., " as showing whether the act was done with the *intent* charged in the indictment." In *Rex v. Winkworth*, 4 C. & P. 444; 19 E. C. L. 465, the prisoners came with a mob to prosecutor's house, and one of the mob went up to him and very civilly advised him that he would better give the mob something to get rid of them, which he did.   For the purpose of showing that this was not disinterested and honest advice, the prosecutor introduced evidence that this mob at other houses demanded money on the same day while the prisoners or some of them were with them.   The competency of it was affirmed by such judges as Parks, Vaughn, Alderson and Lord Tenterden.   In *Regina v. Garner and Wife*, 3 F. & F. 681, on the trial of the husband and wife for the murder of his mother by poison, evidence was admitted to show that the former wife of the prisoner died in the same way, " with a view to enable the jury to determine as to whether such was accidental or not."   See 1 Greenl. Ev. 53 ; 3 Russ. on Cr., §§ 285, 288 ; Ros. Cr. Ev., 86, 89.

The American authorities are, if anything, more pronounced in favor of the competency of this evidence.   *Bottomley v. United States*, 1 Story 135, was a proceeding by information on a libel of seizure of goods imported and concealed in fraud of the impost laws.   The government, on the trial, introduced evidence of former similar acts of the libellee to show the criminal *intent* of the act in question.   Story, J., held the proof competent, *inter alia* " to repel the suggestion, that the act might be fairly attributable to accident, mistake or innocent rashness, or negligence." *Arguendo*, he said :  " In all cases where the guilt of the party depends upon the *intent*, purpose or design, with which the act is done, or upon his guilty knowledge thereof, I understand it to be a general rule, that collateral facts may be examined into, in which he bore a part for the purpose of establishing such guilty *intent*, design, purpose or knowledge."   This question came again before this same

learned judge, when on the supreme bench of the United States in the case of *Wood v. United States*, 16 Pet. 342, which was a proceeding similar to the case just cited. For the purpose of showing the fraudulent intent of the libellee the government introduced evidence of other fraudulent invoices, etc. Story, J., in delivering the opinion, said: "The question was one of fraudulent intent or not, and upon questions of that sort, where the intent of the party is matter in issue, it has always been deemed allowable, as well in criminal as civil cases, to introduce evidence of other acts and doings of the party of a kindred character, in order to illustrate or establish his intent or motive, in the particular act directly in judgment. Indeed, in no other way would it be practicable, in many cases to establish such intent or motive, for the single act, taken by itself, may not be decisive either way; but taken in connection with others of a like character and nature, the intent and motive may be demonstrated almost with a conclusive certainty. They constitute exceptions to the general rule, excluding evidence not directly comprehended within the issue; or rather, perhaps, it may with more certainty be said, the exception is necessarily embodied in the very substance of the rule; for whatever does legally conduce to establish the points in issue, is necessarily embraced in it, and, therefore, a proper subject of proof, whether it be direct or only presumptive." After stating the exception in favor of the admission of such evidence in proof of guilty knowledge in in cases of forgery, uttering false notes and passing counterfeit money, etc., he adds: "Cases of fraud present a still more stringent necessity for the application of the same principle; for fraud being essentially a matter of motive and intention, is often deducible from a great variety of circumstances, no one of which is absolutely decisive; but all combined together may become almost irresistible as to the true nature and character of the transaction in controversy."

In *Osborne v. People*, 2 Park. C. R. 583, this rule was

recognized and applied. The court say: "The acts of the prisoner while in the store rendered it somewhat doubtful whether the entry was a burglary or a trespass, hence the necessity of the proof to show the intent." And in *People v. Wood*, 3 Park. C. R. 681, evidence of prior offenses, of a similar character, more or less connected with that on trial, was admitted, not for the purpose of proving the act under investigation, but " distinctly and solely for the purpose of establishing the *quo animo*, the motive existing in the mind of the prisoner," in committing the act for which he was indicted. In *Comm. v. Turner*, 3 Met. 19, this question is ably considered by the supreme court of Massachusetts. Turner was indicted jointly with one Shearer for kidnapping a negro boy in Massachusetts and running him off to Virginia. For the purpose of showing that Turner was acting with a guilty intent in connection with Shearer, the prosecution introduced evidence to the effect that on the morning of the same day of the alleged abduction Turner was in company with Shearer, inquiring after another colored boy; and, also, that on the previous day Turner endeavored to procure a colored boy from the overseer of the poor at the alms-house under false pretenses. After stating the general rule, and the exception in admitting such proof to establish the *scienter* when material, Dewy, J., says : " Evidence of other facts than those connected immediately with the act charged, are always admissible, where the intent of the defendant forms a material part of the issue, and where those facts can be supposed to have any proper tendency to establish the intent.    *    *
The intent and purpose of the defendant, in obtaining the possession and custody of the individual alleged to be unlawfully taken, were to be inferred from circumstances, and necessarily opened a wide door for the introduction of evidence of the acts of the party accused, having any reasonable degree of connection with the particular act complained of. It was with the view of fixing the character of the last act, that evidence was received of the conduct and declara-

tions of the defendant on the day previous, and at another place, and in reference to another individual.     *     * With reference to such purpose, and thus limited, it seems to us to have been properly admitted."

It would be difficult to find, in a like discussion, a case more parallel in its facts and principles, than that of *Trogden v. Commonwealth*; 31 Gratt. 862, in which this matter is reviewed most thoroughly by that eminent jurist, Staples, J. The prisoner was indicted for obtaining goods from M. & Co. upon false pretenses. On the trial the Commonwealth introduced evidence, to the effect, that the accused, in the same city and at or about the same time purchased goods from other parties, upon like false pretenses, for the purposes of showing the intent of the accused in making the representations to M. & Co. It was held admissible for this purpose; and the decision is placed throughout, upon the ground that the evidence bore upon the question of the fraudulent intent with which the act was done. The authorities are collected and reviewed with a master's hand; and they sustain the proposition contended for beyond any reasonable controversy.

In answer to the suggestion of the counsel for the prisoner, that when the prisoner did the act in question, as it was proved he did, the jury must infer the intent from the act; and, therefore, evidence of collateral facts is unnecessary and irrelevant, and calculated to mislead the jury, the court say: "It may be conceded that when goods are obtained by false representations, the jury may justly infer the fraudulent intent. But it frequently happens, in a large majority of cases, there are numerous facts and circumstances, sometimes of a minute and varied character, throwing light upon the conduct and motives of the accused. It is impossible for the court to foresee what may be developed in the progress of the trial. When evidence is offered of other transactions of the accused to show the guilty intent, is the court to say the intent is already conclusively proved, and the evidence is, therefore, irrelevant? What

would be thought of a judge who would thus prejudze the case and invade the province of the jury. The learned counsel would hardly concede the fraudulent intent of his client upon any state of facts. *     *     We are asked to say that the evidence set out in the bill of exceptions is irrelevant, upon the assumption that without it the jury must have found the guilty intent on the part of the accused." This and its cognates are fully sustained by the following cases: *Friend v. Hamill,* 34 Md. 298; *Cary v. Hotailing,* 1 Hill 311, 316; *Phillips v. People,* 57 Barb. 354; *Rowley v. Bigelow,* 12 Pick. 311; *Comm. v. Eastman,* 1 Cush. 189; *Comm. v. Tuckerman,* 10 Gray 173; *McKenney v. Dingley,* 4 Greenl. 172; *Bielschofsky v. People,* 3 Hun 46, affirmed 60 N. Y. 616; *Miller v. Barber,* 66 N. Y. 559.

It has been suggested that this doctrine is opposed by so great a jurist as Judge Agnew in the case of *Shaffner v. Commonwealth,* 72 Pa. St. 60. In the course of that opinion he says: " To make one criminal act evidence of another, a connection must have existed between them in the mind of the actor, linking them together for some purpose he intended to accomplish; or it must be necessary to identify the person of the actor, by a connection which shows that he who committed the one must have done the other." The case was one which did not render such evidence material in ascertaining the intent of the party accused.

Hence, it is to be observed that he treats the question as if the attempt was made by the *nisi* court " to make one criminal act evidence of another." In such case, there can be no question but there should be such a connection between the two acts or offenses as to link them together in the mind of the actors, so as to make one follow the other as a means to an end. This was the state of the case in *State v. Greenwade,* 72 Mo. 298. The limitation of the rule as applied by Agnew, J., *supra,* was proper, because there was no question, essentially, of guilty knowledge or intent; for as it is said in the statement of the case: " The evidence tended to show that she died by poison, and the

principal question was, whether the poison had been administered by the defendant."

In the case at bar, the very gist of the offense charged is the criminal intent with which the act was done; and the burden of proof rests upon the State. *Anable's Case,* 24 Gratt. 563, 570. It must be shown affirmatively that the defendant's purpose was to defraud. Such intent is not a presumption of law, but is a fact to be found by the jury. *Trogden's Case, supra.* It has been held by the highest authority, in this class of cases, that even the admission of the accused, that the act was done with the criminal intent cannot preclude the State from proving it by any other competent testimony, for the jury are the sole judges of the evidence. *Comm. v. McCarthy,* 119 Mass. 354; *Priest v. Groton,* 103 Mass. 530. Under the facts of this case, it was for the jury to say whether the act of the prisoner was a criminal act, done with a fraudulent intent to obtain the money of the clerk, or whether it was a mistake or effort merely to practice upon him a joke. The jury without violence to reason, under an instruction to give the prisoner the benefit of every reasonable doubt, have convicted him. The prosecuting attorney, as suggested by Staples, J., *supra,* and by Roscoe in his Criml. Ev., 91, had the right to anticipate an obvious defense of the prisoner, that it was a mistake or without criminal intent, and put in, in the first instance, all his evidence bearing on the issue. The evidence further showed that the prisoner started out on that day with the perpetration of the several acts linked together in his mind. His purpose was, to employ his own vulgar but suggestive terms, "to do the town." He did "beat" the unwary out of $10 by the same attempted "trick."

We think both on reason and authority, the evidence complained of was admissible under the circumstances of this case. The other acts were so recent, and so allied in character and purpose to the one on trial, that they were quite essential to enable the jury to reach a conclusion, just alike to the people and the accused. It was offered with the

distinct statement by the prosecuting attorney that it was for the purpose of showing the defendant's intention in the attempt upon young Beard. With this limitation on its scope it was properly admitted.

It follows that the judgment of the circuit court should be affirmed. All concur.