The State v. Williamson.

THE STATE v. WILLIAMSON, *Appellant.*

DIVISION TWO.

1. **Practice, Criminal:** CHALLENGE OF GRAND JURORS. A grand juror can only be challenged upon the ground that he is the prosecutor or complainant in the case, or is a witness for the prosecution. (R. S. 1889, secs. 4067, 4068.)

The State v. Williamson.

2. ———— : COMPETENCY OF JURORS. Persons who have formed opinions of the guilt or innocence of one accused of crime from rumor or newspaper reports are not, for that reason, disqualified to sit as jurors in the trial of the case, where they believe they can give the defendant a fair and impartial trial.

3. ———— : ————. The finding of the trial court as to the qualifications of jurors will not be disturbed, unless it appears that manifest error has been committed.

4. ———— : EVIDENCE. The rule that, in a criminal trial, evidence of other and distinct crimes are not admissible, will not preclude evidence tending to prove the offense for which the defendant is being tried, although it tends to prove him guilty of another and separate offense.

5. ———— : ————. On a trial for murder, any fact is admissible in evidence which tends to prove the motive for the crime, notwithstanding it may tend to prove the defendant guilty of another murder.

6. ———— : ———— : INSANITY. One who is not an expert may give his opinion as to the sanity or insanity of a person, when given in connection with the facts existing in his own knowledge which form the basis of such opinion; but he cannot, like an expert, give his opinion upon a hypothetical case.

7. ———— : ———— : ————. Where the acts of a person testified to by a non-expert witness as forming a basis for the witness' opinion as to his insanity are such as to indicate perfect sanity, a refusal to allow the opinion to be given is harmless.

8. ———— : ————. The testimony of an officer identifying a written confession made to him that " that is the sum and substance of it in that paper " is not objectionable.

9. ———— : ALLEGATIONS AND PROOF. Where an indictment charges a killing to have been done with an axe, an instruction is not erroneous which authorizes a conviction, if the jury find it to have been done by cutting or striking deceased in a vital part with any weapon whatever. The indictment should set out the instrument or means of the killing, but the proof need not strictly conform to the averment, either as to the means or manner of using them.

10. ———— : INSANITY. The law on the subject of insanity as declared in *Baldwin v. State*, 12 Mo. 223, and *State v. Redemeier*, 71 Mo. 173, followed and approved.

*Appeal from Pettis Criminal Court.*—Hon. JOHN E. RYLAND, Judge.

AFFIRMED.

*John M. Wood*, Attorney General, *George F. Longan* and *R. W. Prigmore* for the State.

(1) The plea in abatement could not avail defendant. R. S. 1889, secs. 4067, 4068. Even if the statutory objections had been made, they would not have been of any avail at the time they were made. *State v. Holcomb*, 86 Mo. 371; *State v. Turlington*, 102 Mo. 642. (2) The jurors to whom objections were made were competent. *State v. Walton*, 74 Mo. 270; *State v. Cunningham*, 100 Mo. 382; *State v. Brooks*, 92 Mo. 542; *State v. Greenwade*, 72 Mo. 298. The finding of the trial court as to the qualifications of the jurors will not be disturbed unless the error is manifest. Thompson & Merriam on Juries, sec. 258; *State v. Brooks*, 92 Mo. 542. (3) The evidence as to the disappearance of Chas. Moore, the finding of his body, the contradictory statements made by defendant as to his whereabouts and his confession as to the killing of both were admissible to prove intent and motive for killing Jefferson Moore. It tended to prove the commission of the crime charged. *State v. Myers*, 82 Mo. 558; *State v. Harrold*, 38 Mo. 496; *State v. Greenwade*, 72 Mo. 298; *State v. Bayne*, 88 Mo. 604. (4) The court did not err in refusing to allow Mrs. Sampson to give her opinion as to the sanity or insanity of defendant, as she had not had "adequate opportunity of observation and judging of capacity." *Baldwin v. State*, 12 Mo. 223; *Appleby v. Brock*, 76 Mo. 314; *Moore v. Moore*, 67 Mo. 192; *Turner v. Railroad*, 23 Mo. App. 13; *State v. Erb*, 74 Mo. 199; Kerr on Homicide (1891), secs. 482, 483. (5) The proof need not correspond strictly to the averment either as to the means used in the commission of the offense or the manner of using them. 9 Am. & Eng. Ency. of Law, p. 633; Kerr on Homicide, sec.

256, pp. 290, 291; *State v. Weddington*, 9 S. E. Rep. 577; *Rogers v. State*, 50 Ala. 102; *Long v. State*, 36 N. W. Rep. 310.

GANTT, P. J.—The defendant, Thomas Williamson, was indicted at the November term, 1890, of the Pettis county criminal court, charged with murder in the first degree, with having on or about the twenty-fifth of May, 1890, killed and murdered Jefferson Moore by striking him on the head with an axe. Counsel were assigned him by the court.

He filed a plea in abatement to the indictment based on the ground that he was not afforded an opportunity of challenging the grand jury. He alleged none of the statutory grounds of challenge to any member of the grand jury. The plea was held bad and overruled by the court. Defendant was duly arraigned and entered a plea of "not guilty." The cause was continued from November to the third of February, 1891. On that date, both parties announcing ready, the court proceeded to impanel a jury. The defendant challenged the following jurors on the panel of forty, to-wit, A. P. Hyatt, Jacob J. Farmer, who were selected and served on the jury of twelve; also W. J. Mann, Richard Taylor, Clinton H. Oliver, Henry J. Dehmey, Joseph T. Davidson, Hugh W. Anderson and Joseph E. Turner.

On their *voir dire*, Hyatt answered, "he had read account of killing in the newspapers at the time. Didn't remember any account of coroner's inquest only in a general way; formed no opinion from what he read or heard at the time, and has none now." C. H. Oliver answered, he had formed and expressed an opinion; it was based upon the account of the killing he had read in the newspapers and from what he had heard others say. Didn't read coroner's inquest; would take evidence to remove the opinion he had formed on newspaper accounts and rumor. He could give accused a fair and impartial trial without prejudice.

Richard Taylor: "He had read all the accounts of the killing in the newspapers, also evidence at coroner's inquest; from what he had read in the papers, and from general rumor, had formed and expressed an opinion; take some evidence to remove same; didn't rely much on newspaper report; could give accused fair and impartial trial."

Joseph E. Turner said: "Read some account of killing in newspapers. No one had related what purported to be the facts. Heard general rumors and talk of killing. Had formed no opinion."

Henry J. Dehmey: "Did not read account in papers; talked with others who had and who related facts as they understood them; had formed opinion and would take evidence to remove it; couldn't say whether I'd favor one side or the other."

Hugh W. Anderson: "Read some in papers; not account of coroner's inquest; from what I read and general rumors, formed opinion; never talked with any witness or anyone who related the facts; would take evidence to remove opinion; could give accused trial without being biased by anything I have heard or read."

Joseph T. Davidson: "Didn't read account in papers; talked with others about killing; not any of the witnesses; no one related what purported to be the facts; formed opinion from general rumor, and suppose would take evidence to remove same; don't put much stress on reports; rely more on sworn testimony."

Jacob J. Farmer: "Had not formed or expressed any opinion as to the innocence or guilt of the defendant."

W. J. Mann stated: "Formed an opinion as to guilt or innocence of accused from newspaper account and general rumor; take evidence to remove same; could give accused fair and impartial trial according to evidence."

The jury having been selected, the facts as detailed in evidence show that Jefferson Moore and Charles Moore, father and son, Jefferson Moore being the father, had for some time prior to the killing lived upon a small farm owned by one of them, and being some four miles south of Sedalia on what is known as Flat creek; that they lived alone, keeping "bachelor's hall," and that about the —— day of March, 1890, the defendant was employed by them as a farm hand, and from that time to the time of the killing lived with the two Moores, no one else living on the farm during that time; that about the fifteenth day of May, 1890, Charles Moore, the young man, disappeared, and was missed by some of the neighbors; that in a few days afterward Jefferson Moore disappeared, and was missed by the neighbors; that in a few days after this the neighbors became suspicious, and began making inquiries as to the whereabouts of the two Moores; that the defendant was seen by different people living in the neighborhood, and told different stories as to the whereabouts of the two Moores; that on Monday, the twenty-sixth day of May, 1890, several of the people living in that neighborhood, acting under the advice of the prosecuting attorney, went to the Moore farm to investigate the matter; that at that time defendant was in Sedalia; that in searching the premises they found in an abandoned cellar to the house on the farm, which cellar had no entrance except from the outside of the house, and that, having no door, considerable fresh dirt had been dumped from this entrance, and digging through said soft dirt they found the body of Jefferson Moore lying on the face, and with no clothing except an undershirt; a gunny sack thrown over him, with two large and mortal wounds on the head with the appearance of having been made with a sharp instrument; and on the same day the said parties, making further search in the field, found buried the body of the son, Charles Moore, being about one hundred and fifty yards southeast of

the house, and near the place where Charles Moore was last seen alive, chopping timber with the defendant; that the defendant Williamson, on the Sunday night prior to the finding of the bodies, had given to his sweetheart, Becky Arnold, some papers,—one purporting to be a lease of the farm from Charles Moore, and one a bill of sale of all the stock on the farm from Jefferson Moore,—and told her he had bought the stock and leased the farm; which said papers, as shown by evidence, the defendant had forged; that he at the same time gave to her a watch which belonged to Jefferson Moore, according to the evidence, and some other articles belonging, according to the evidence, to the Moores; that after the disappearance of the Moores the defendant told different parties that Charles Moore had gone away to get married; that he had seen him in Sedalia, and that Jefferson Moore had gone to the springs for his health, and that afterward he admitted to the sheriff, Ellis R. Smith, that he had killed both Jefferson Moore and Charles Moore.

On the day the bodies of Jefferson and Charles Moore were found, defendant took poison, and came near dying.

The defense consisted principally of a plea of insanity, and much evidence was offered and heard on that plea. It appears that defendant was born and reared in Tazewell county, Illinois; when about twenty-two years old, he had typhoid fever; this disease left him partially crippled in one hand and leg; after he recovered from this sickness, he was irritable and considered generally as weak-minded. When the war began in 1861, he at once enlisted in the federal army in the seventh Illinois regiment; he was discharged six months later on account of sickness; he again enlisted in the one hundred and eighth Illinois regiment, and served till the close of the war.

The depositions of the officers of his company were read to the effect that he was generally regarded as a

simple, weak-minded man ; he could not be relied on for important service ; these officers had not seen him, since 1876, long enough at one time to form an opinion as to his sanity since that time. Witnesses living in Pettis county were examined on the part of defendant and the state as to his physical and mental condition. The court at the conclusion of the evidence instructed the jury fully upon murder in the first and second degree and the different grades of manslaughter. The instruction on murder in the first degree, and the definition of the terms used in it, was given at the instance of the state ; those defining murder in the second degree and the various degrees of manslaughter were given as asked by the defendant. The court instructed on the plea of insanity. Under the instructions of the court the jury found the defendant guilty of murder in the first degree ; from the sentence on this verdict, he appeals to this court.

There was no error in sustaining the demurrer to the plea in abatement to the indictment. There was no allegation that any member of the grand jury was the prosecutor or complainant or a witness for the prosecution. R. S. 1889, secs. 4067, 4068 ; *State v. Holcomb*, 86 Mo. 371 ; *State v. Turlington*, 102 Mo. 642.

The jurors challenged for cause were competent. All who had opinions at all had formed them upon rumor or newspaper reports, and were confident they could give defendant a fair and impartial trial. The criminal court saw these jurors, observed their manner, and its finding will not be disturbed unless it appears that manifest error has been committed. *State v. Bryant*, 93 Mo. 273 ; *State v. Walton*, 74 Mo. 270 ; *State v. Cunningham*, 100 Mo. 382 ; *State v. Brooks*, 92 Mo. 542 ; *State v. Greenwade*, 72 Mo. 298.

Counsel for defendant urges that the trial court erred in admitting testimony in regard to the disappearance of Charles Moore ; that his client was on trial for the murder of Jefferson Moore alone, and it prejudiced his

case to show that he had killed two men when he was on trial for killing only one. No court has been more jealous of the rights of the accused than this court in excluding from the jury evidence of separate and distinct offenses; but in *State v. Harrold*, 33 Mo. 496, while the general rule was recognized, that it was not permissible to show that the accused had committed other crimes than the one for which he was on trial, yet it was said in that case, "this doctrine is not carried so far as to exclude evidence which has a direct tendency to prove the particular crime for which the prisoner stands indicted." If the evidence offered has this direct tendency it is to be received, though it also tends to prove another separate and distinct offense. This ruling was approved in *State v. Greenwade, supra*. It must be remembered that the burden was on the state to show the motive and intent with which the defendant killed Jefferson Moore. Hence, when both father and son were found dead in such close proximity to each other, and the defendant was shown to have in his possession the watch of Charles Moore, and a lease from Charles to the farm, and a bill of sale of the stock from his father, the apparent motive was robbery and to possess himself of their property, and this constituted one common design or purpose, and, in tracing it, any fact or circumstance showing this was admissible. The transaction was made up of a variety of incidents, but any fact that tended to elucidate the principal fact, namely, the motive with which he killed the father, was competent. *State v. Gabriel*, 88 Mo. 631; *State v. Jackson*, 95 Mo. 623; *State v. Bayne*, 88 Mo. 604; *State v. Myers*, 82 Mo. 558.

Defendant also complains that the court refused to permit Mrs. Sampson to give her opinion as to the sanity or insanity of the defendant. The rule is well established in this state that witnesses who are not experts may be permitted to state their opinion as to the sanity or insanity of a person, but it can only be done in connection with their statements of the particular conduct and

expressions which form the basis of their judgment. They must give the court or jury the facts existing within their own knowledge, and then give their opinion on these facts; but they cannot like experts give their opinion upon a hypothetical case. But, to justify the court in permitting them to give an opinion at all, they must have had "adequate opportunity of observation and judging of capacity." From Mrs. Sampson's evidence it appears, he occupied an out-house on her lot in Sedalia, and as a compensation he cut wood and made fires occasionally for her. It does not appear that she had any conversation with him, until after he was arrested, and if we are to judge from that conversation he was perfectly rational. She had certainly not testified to any acts of the defendant that would indicate he was other than sane, and we conclude that as any answer she might have given must necessarily have been based upon the facts she had detailed, that no harm could have resulted from her failure to answer.

On the trial Ellis Smith, the sheriff of Pettis county, testified and identified a confession made by defendant about June 6, 1890. This paper was read to the jury, and, upon being asked to state anything further that Williamson said at the time of this confession, the witness answered, "that is the sum and substance of it in that paper." This is assigned now as error. At most it is simply cumulative. As he went no further than to say, that the confession was in the paper, it amounted to no more than if he had carefully read it over and identified it as the confession made to him and committed to writing at the time. There is no force in the objection.

Counsel for defendant insist that the court's instructions are inconsistent, because in one the court says, the charge was that defendant killed Jefferson Moore with an axe, and then told the jury, if they believed defendant killed Moore as stated in the indictment, they would find him guilty, etc., whereas in the second instruction he

tells the jury that if the jury find he killed him "by cutting or striking him in a vital part with any weapon whatsoever with design," etc., he is guilty. The indictment charged the killing to have been done with an axe. The evidence sustained the charge. There was evidence that a hatchet was found on the premises also. While it is necessary to set out in an indictment the weapon or other instrument or means by which the killing is charged to have been done, it is now the weight of opinion that the proof need not conform strictly to the averment either as to the means used or the manner of using them. 9 Amer. & Eng. Ency. of Law, 633; *State v. Weddington*, 9 S. E. Rep. 577; *Rodgers v. State*, 50 Ala. 102; *Long v. State*, 36 N. W. Rep. 310. "It is, therefore, sufficient if the proof agree with the allegation in its substance and general character without precise conformity in every particular." 1 Greenleaf Ev. [14 Ed.] sec. 65. In *Rogers v. State, supra*, the court charged the jury "that, if the jury were convinced beyond all reasonable doubt that the deceased came to his death at the hands of defendant, it matters not what sort of weapon he was killed with or how the weapon was used," and the supreme court of Alabama on appeal held, this was not such a departure from the rule of law governing the proof or means of the killing as vitiated the charge and made it erroneous., "The charge is that the deceased was killed by having his head cut off. Proof of any means of effecting this with a weapon would be sufficient to convict." In this case, the evidence so clearly sustained the indictment as to the character of the weapon and the manner of its use, that the charge even if erroneous could not have misled the jury, but, reading the charge as a whole in the light of the testimony, there was no error in it in this regard.

This brings us to a review of the instructions as a whole. The first, defining murder in the first degree, was asked by the state, and has been so often approved

no further mention need be made of it. All those defining murder in the second degree and manslaughter in the various degrees were prepared by and given at the request of the defendant. The instruction on the subject of insanity is in strict conformity to the law as announced in *Baldwin v. State*, 12 Mo. 223, and adhered to ever since. Whether the courts in dealing with this subject have kept pace with the scientific world and the humanity of the age, may well be questioned ; but so far, it seems to us, this court has adopted the only rule by which society at large can be protected. We see no reason for overturning a well-settled rule and attempting to follow the *ignis fatuus* of "uncontrollable impulse." We might as well announce there would be no more prosecutions for homicide. As was well said by NORTON, J., in *State v. Redemeier*, 71 Mo. 173, this state, acting upon the principle that "*in medio tutissimus est*, has adopted a rule lying between these two extremes, holding that the defense of insanity is established when the evidence offered in support of it preponderates in favor of the fact, and reasonably satisfies the jury that it existed at the time the criminal act charged was committed. * * * The fact that insancity is so easily simulated demonstrates the wisdom of the rule, and affords a strong reason why we should adhere to it." The court instructed on this theory in this case, and its instruction on that subject is such as has been approved again and again. Taken altogether the instructions were unexceptionable, and leave the defendant no ground for complaint. The very fact that they have been so often approved is our reason for refusing to repeat them here.

Every phase of the case was submitted to the jury, and they found the facts against the defendant, and we are not authorized to say in the face of this record, they were not justified in so finding. We were fully impressed by the argument of the learned counsel for

the defendant with the importance of proceeding cautiously in this case. The defendant is evidently not strong mentally, and no more delicate or grave duty can devolve upon a jury or court than to fix the responsibility of such a man for so great a crime. So feeling, we have scanned this record closely to see that no wrong should be done the defendant, either by the lower court or ourselves. We think the cause was well and humanely tried; and we think there was evidence sufficient to justify the jury in finding that defendant was conscious of the crime he was committing and knew the right from the wrong of the act he was committing; the hiding of his victims; the secreting of their valuables; the attempt at suicide when about to be detected, all go to show he recognized the enormity of the crime he had committed. That it is possible it was the result of an insane impulse may be true, but we are satisfied that he was tried impartially, and the facts according to our mode of procedure were found against him, and as an appellate court it becomes our duty to affirm the judgment, and it is so ordered.    All concur.