THE STATE v. WILSON, *Appellant.*

Division Two, March 15, 1898.

1. **Criminal Law:** INDICTMENT: OBTAINING MERCHANDISE TO BE PAID FOR ON DELIVERY: SECTION 3564. Under section 3564, Revised Statutes 1889, making it a felony for one to fraudulently obtain merchandise to be paid for upon delivery and to fraudulently sell the same before paying for it, it is not necessary to charge that the accused "*designedly*" agreed to pay for the goods on delivery or "*designedly*" obtained possession of them. This word applies only to the latter part of the statute.

2. ———: ———: ———: DUPLICITY. The indictment in this case ended with the words: "And so the grand jurors . . . . . . . do say that said . . . . . . . did steal, take and carry away," etc. The statute makes the punishment for obtaining and selling goods under an agreement to pay for them on delivery, the same as feloniously stealing such goods. *Held,* that by the use of these words the pleader did not join in one count two separate and distinct offenses; that at most they are mere surplusage; but, as they are found in old and long approved indictments under similar statutes, they are not condemned even on that ground.

3. ———: ———: DUPLICITY: MOTION TO ELECT: WAIVER. Where no attempt is made to have an indictment quashed on the ground of duplicity, and no motion is made to require the State to elect, it is too late after verdict to raise this objection.

4. **Evidence:** MATTERS OF ARGUMENT. The contention of the defendant that the prosecuting witness confused the sale in question with another, was a matter of argument for the jury.

5. ———: MATTERS FOR THE JURY. The bills of the prosecuting wit-
ness, in a prosecution based on an agreement to pay for merchandise
on delivery, contained a statement, printed at the top, that accounts
must be paid by a certain time. *Held*, that as this evidence went to
the credit, and not the competency of the witness, it was matter to
be weighed by the jury.

6. ———: CONTEMPORANEOUS PURCHASES: FRAUDULENT PURPOSES. The
State was permitted to introduce a number of witnesses to testify
that on the same day, in the same city, the defendant made similar
contracts with them, got the same kind of goods and shipped them to
the same market and did not pay for them; that he then absconded,
and after the goods had reached the Boston market, he returned, but
avoided his place of business. *Held*, that this evidence was admissi-
ble to show a common fraudulent purpose and intent to cheat and
defraud.

7. ———: SUBSEQUENT STANDING. Where the whole issue in a crimi-
nal prosecution is whether or not defendant agreed to pay for the
goods bought on delivery, evidence showing his subsequent failure,
and letters and telegrams thereafter showing that he had about that
time lost standing with his banker, are irrelevant.

*Appeal from Jackson Circuit Court.*—Hon. John W.
Wofford, Judge.

AFFIRMED.

*Stauber & Crandall, Henry Wollman, Alexander
New* and *Isaac B. Kimbrell* for appellant.

(1) The indictment is defective: *First.* It does
not aver that the "contract for the purchase" was
made designedly and with intent to cheat and defraud.
*Second.* It does not aver that defendants designedly and
with intent to cheat and defraud agreed to pay cash on
delivery. *Third.* It does not aver that defendants design-
edly and with intent to cheat and defraud obtained pos-
session of the goods. *Fourth.* It utterly fails to charge
that Stanton B. Willock then and there delivered the
goods to the defendants in pursuance of said contract
and because he believed in and relied upon defendant's
agreement to pay cash upon delivery. *Fifth.* It does

not aver that defendants designedly and with intent to cheat and defraud, transferred, secreted and disposed of the goods.    *Sixth.* It does not aver that defendants unlawfully, feloniously and designedly, and with intent to cheat and defraud, failed to pay the said S. B. Willock.    *State v. Daggs*, 106 Mo. 160; *State v. Crooker*, 95 Mo. 394; *State v. Hayward*, 83 Mo. 310; *State v. Emerich*, 87 Mo. 115. (2) Every felonious act must be charged to have been feloniously done.    It should have been positively averred that the contract of purchase, agreement to pay cash on delivery, obtaining possession, selling, transferring, and secreting, failing to pay and failing to satisfy, were each committed fraudulently, designedly, feloniously, and with intent to defraud.    In statutory offenses there must be an evil intent, though the statute is silent on the subject. Therefore, it was necessary to allege that "the failing to satisfy" was done designedly, feloniously, and with intent to cheat and defraud.    *State v. Reilly*, 4 Mo. App. 397; *State v. Davis*, 29 Mo. 391; *State v. Herrell*, 97 Mo. 105; *State v. Ross*, 25 Mo. 426; *State v. Feaster*, 25 Mo. 324; *State v. Emerich*, 87 Mo. 116; *State v. Evers*, 49 Mo. 543; *State v. Vorback*, 66 Mo. 168; *State v. Terry*, 109 Mo. 601; *State v. Saunders*, 63 Mo. 482; *State v. Bonnell*, 46 Mo. 395. (3) The indictment is duplicitous. Two offenses which are essentially repugnant to and inconsistent with each other can not be joined in the same indictment, even in different counts.    *State v. Porter*, 26 Mo. 206; *State v. Rector*, 11 Mo. 28; *State v. Flint*, 62 Mo. 394; *State v. Bridges*, 24 Mo. 253; 1 Bishop's Crim. Plead. and Prac., chap. 31; *State v. Dennis*, 80 Mo. 595; *State v. Fitzsimons*, 30 Mo. 237; 1 Archbold, Com. Plead. and Prac., pp. 95, 96; 1 Chitty Crim. Law, pp. 231 to 235; Wharton, Crim. Law, secs. 2087, 2116, 2118, 2121, 2122 and 204; Bishop on Stat. Crimes, 418, 421, 422; R. S. 1889, secs. 4103–4104;

*Com. v. Strain*, 10 Met. 521.   (4)   The court erred in overruling defendant's objections to this question asked S. B. Willock, the prosecuting witness:   "*Q.* What were the terms that you sold these goods? Objected to; objection overruled.   *A.* It was cash; it was spot cash at my door.   *Q.* To be paid on delivery?   *A.* Yes, sir."   The question calls for a mere conclusion.   The answer shows furthermore that the witness had in mind the conversation between himself and defendant about the $1,100 car of eggs sold to the other parties.   We say this for the purpose of showing the injury to defendant's cause of allowing the prosecuting witness to state a mere conclusion drawn from both negotiations between himself and defendant.   (5)   The court erred in admitting, over defendants' objections, the testimony of witnesses Brady, Hilt, Dunkeson, Phillips, Townsend, Bandy, Hamblin and Fudge.   Their testimony did not prove that defendant bought goods from them, agreeing to pay cash upon delivery, but it did show that defendant owed them for goods and had not paid them, and in the light of the fact that the court refused to allow defendant to show his inability to pay, and the reason of his inability to pay, together with his good faith and honest intention in making purchases from them, the testimony was calculated to prejudice the jury against defendant.   *State v. Reilly*, 4 Mo. App. 395; *St. Louis Foundry v. Union Co.*, 3 Mo. App. 142.   (6)   The court erred in admitting any testimony as to a contract between Emmet H. Wilson and Willock.   The indictment charged a joint contract made by Emmet H. Wilson and E. E. Wilson.   "Where the petition declares on a joint contract of the defendants, it is incompetent to admit a contract which is only several." *Davis & Rankin v. Mayesville Creamery*, 63 Mo. App.

477; *Gamble v. Kellam*, 12 So. Rep. (Ala.) 82; *Bank v. Campbell*, 34 Mo. App. 45. (7) The court committed error in excluding the evidence, asked the defendant, a witness in his own behalf. The testimony went to the very essence of the crime charged— the criminal intent. The testimony further showed that the bank received no orders not to honor defendant's check until the week following this transaction. It was strong evidence of defendant's good faith. There can be no crime without a criminal intent. *State v. Reilly*, 4 Mo. App. 392; *State v. Porter*, 67 Mo. 84. (8) It was error to sustain the State's objections to questions asked defendant and other witnesses as to his efforts to assist a committee of his creditors to stop the goods in transit, including the goods bought from Willock. While the goods were in transit defendant was "then and there selling, transferring and disposing of them." This had to be done designedly and with intent to cheat and defraud to constitute a felony. *State v. Gabriel*, 88 Mo. 639; *Hunter v. State*, 40 N. J. L. 405; *State v. Hayden*, 9 Rep. 237; *State v. Mathews*, 20 Mo. 56; *State v. Graham*, 46 Mo. 490.

*Edward C. Crow*, Attorney-General, *Sam B. Jeffries*, Assistant Attorney-General, and *Marcy K. Brown*, for the State.

(1) The indictment is correctly drawn, following the words of the statute as near as may be and fully informing defendant of the charge brought against him. McClain's Crim. Law, sec. 550. A fraudulent taking is a wrongful taking, and constitutes larceny. *People v. Shaw*, 57 Mich. 403; *People v. Shipply*, 86 N. Y. 375; *People v. Hildebrand*, 56 Me. 394; Wharton's Crim. Law, sec. 1865a. (2) No error was committed in admitting the testimony of witnesses Howe, Hilt,

Dunkeson, Phillips, Townsend, Hamblin and Pudge. They testified that on the same day that the fraudulent contract was made with the prosecuting witness the defendant also made similar contracts with them. This evidence was admissible for the purpose of showing defendant's fraudulent intent. *State v. Sarony*, 95 Mo. 349; *State v. Bayne*, 88 Mo. 604; *State v. Cooper*, 85 Mo. 256; *State v. Meyers*, 82 Mo. 558. (3) The indictment is sufficient and in proper form. R. S. 1889, sec. 3564; Kelley's Crim. Law and Pr., sec. 692, p. 475. All the cases cited in appellant's brief are cases of obtaining property by false pretenses, where entirely different allegations are necessary, because entirely different principles prevail. *State v. Madden*, 81 Mo. 422; *State v. Davis*, 70 Mo. 467; *State v. Roehm*, 61 Mo. 82; *State v. James*, 63 Mo. 570; *State v. Barr*, 81 Mo. 118; *State v. Stogsdale*, 67 Mo. 630; *State v. Tissing*, 74 Mo. 72; *State v. Anderson*, 81 Mo. 78; *State v. McDaniel*, 40 Mo. App. 356. (4) The appellant's contention as to the admissibility of the telegram and letters from the Boston parties, and defendant's alleged course of dealing with them, is entirely untenable. That evidence was incompetent and immaterial from either the standpoint of the State or of the defendant. The State contended that the defendant promised to pay on delivery; the excluded evidence certainly threw no light on this issue. *State v. Crosswhite*, 130 Mo. 364.

GANTT, P. J.—This is an appeal from the criminal court of Jackson county from a conviction under section 3564, Revised Statutes 1889, for fraudulently and feloniously obtaining merchandise under an agreement to be paid for on delivery and fraudulently selling and disposing of the same before paying or satisfying the owner therefor. There were three counts in the indictment, but as the State dismissed as to the second and

third counts before or at the trial, the sufficiency of the second and third counts will not be noticed further.

The first count is in these words: "The grand jurors for the State of Missouri in and for the body of the county of Jackson upon their oath present that Emmet H. Wilson and E. E. Wilson, whose Christian names in full are to these grand jurors unknown, late of the county aforesaid, on the 13th day of May, 1896, at the county of Jackson, State of Missouri, with felonious intent to cheat and defraud one Stanton B. Willock, fraudulently, unlawfully and feloniously did agree and contract with the said Stanton B. Willock (under the name of S. B. Willock) for the purchase of certain goods, wares and merchandise, to wit; three thousand dozens of eggs, of the value of two hundred and fifty-five dollars, at and for the price of two hundred and fifty-five dollars, to be paid for by the said Emmet H. Wilson and E. E. Wilson, in cash upon delivery of the said goods, wares and merchandise, before described, by the said Stanton B. Willock, to them, the said Emmet H. Wilson and E. E. Wilson, in the city of Kansas City, in Jackson county, Missouri; and that the said Emmet H. Wilson and E. E. Wilson, in pursuance of said fraudulent and felonious intent of them, the said Emmet H. Wilson and E. E. Wilson, to fraudulently and feloniously cheat and defraud the said Stanton B. Willock of the said goods, wares and merchandise, before described, the personal property of him, the said Stanton B. Willock, of the value of two hundred and fifty-five dollars, did then and there fraudulently, unlawfully and feloniously obtain possession of the said goods, wares and merchandise, before described, under the said contract and agreement aforesaid, and in further pursuance of the said fraudulent and felonious intent of them, the said

Emmet H. Wilson and E. E. Wilson, to fraudulently and feloniously cheat and defraud the said Stanton B. Willock, of the said goods, wares and merchandise before described, the said Emmet H. Wilson and E. E. Wilson, after obtaining the possession of the said goods, wares and merchandise, before described, under the said contract and agreement, fraudulently, unlawfully and feloniously did then and there sell, transfer and dispose of the said goods, wares and merchandise before described, to certain other persons, whose names are to these grand jurors unknown, at and for a price and sum, which is to these grand jurors unknown, before paying or satisfying the said Stanton B. Willock, the owner of said goods, wares and merchandise, before described, or his agent, a clerk or servant, therefor; and the said Emmet H. Wilson and E. E. Wilson have failed and refused, and still fail and refuse to pay to the said Stanton B. Willock the purchase price thereof by payment in cash, as · agreed upon, or by payment in any other manner whatever, with felonious intent to cheat and defraud the said Stanton B. Willock. And so the grand jurors aforesaid, upon their oath aforesaid, do say that said Emmet H. Wilson and E. E. Wilson, the goods, wares and merchandise, before described, to wit; the three thousand dozens of eggs aforesaid, of the value of two hundred and fifty-five dollars, the property of the said Stanton B. Willock, in manner and form aforesaid, then and there fraudulently, unlawfully and feloniously did steal, take and carry away against the peace and dignity of the State.''

The defendant was duly arraigned, pleaded not guilty, was tried and convicted and his punishment assessed at two years in the penitentiary. Motions to quash the indictment, for new trial and in arrest of

judgment were duly filed and overruled. Defendant appeals.

The assignments of error can best be considered in the order of defendant's brief.

I. As the accusation is based upon a statute, its sufficiency must be measured by the statute. The prosecution relies upon section 3564, Revised Statutes 1889. So much thereof as is applicable here is as follows: . . . . . . . "Every person who shall, with intent to cheat and defraud another, agree or contract with such other person or his agent, clerk or servant for the purchase of any goods, wares, merchandise or other property whatsoever, *to be paid for upon delivery*, and shall, in pursuance of such intent to cheat and defraud, after obtaining possession of any such property, sell, transfer, secrete or dispose of the same before paying or satisfying the owner or his agent, clerk or servant therefor, shall, upon conviction thereof, be punished in the same manner, and to the same extent as for feloniously stealing the money, property or thing as obtained."

One of the principal complaints lodged against this indictment is its failure to charge that the contract for the eggs was "designedly made" and that the defendants "designedly" agreed to pay cash and "designedly" obtained possession of the eggs. This objection evidently is upon the fact that section 3564 also makes "every person who, with intent to cheat and defraud another, shall designedly, by color of any false token or writing or by any other false pretense obtain the signature of any person to any written instrument or obtain from any person any money, personal property, right in action or other valuable thing or effect whatsoever," guilty of a felony, and punishable in the same manner as if convicted of grand larceny. But it is apparent that so much of the section as governs

the offense of obtaining the possession of goods by means of a promise to pay cash on delivery, is complete if done with the felonious intent to cheat and defraud, and the fraudulent purchaser disposes of them without paying therefor. It is not at all essential in charging an offense under this clause of this section to use the word "designedly." The indictment so far as this objection goes is well enough. It uses all the substantial terms of that clause of the statute and apprises the defendant of the nature of the accusation against him. It charges further that the defendants with the felonious intent to cheat and defraud Willock fraudulently and feloniously contracted with him for the eggs, to be paid for on delivery and did then and there thereby fraudulently and feloniously obtain possession thereof under and by virtue of said contract to pay cash on delivery and in further pursuance of said fraudulent intent defendants after thus obtaining possession of said eggs did fraudulently and feloniously sell and transfer and dispose of said eggs to persons unknown to said grand jurors before paying for the same or satisfying the owner of said goods therefor. Every ingredient of the crime denounced by the statute is thus distinctly averred and the objections to the indictment are extremely hypercritical and far fetched. We are of opinion that every substantive fact necessary to constitute this offense is alleged, and that the acts and doings are charged to have been feloniously done and with the intent to cheat and defraud.

The charge of duplicity is based upon the concluding words of the indictment "that the defendants did take, steal and carry away the goods." It is urged that by the use of these words the pleader has joined in one count two separate and distinct offenses. These words alone merely state a conclusion of law, and may be disregarded as surplusage. The form however is

very old and has met the approval of the courts for a long time and it was entirely safe to use it. Inasmuch as the offense is punishable as grand larceny, the pleader has followed the approved precedents in charging embezzlement. Thus in charging embezzlement these words were often used in concluding the indictment, and Bishop says: "The practice is to insert it and it seems to be required by the decisions," though in his opinion they are unnecessary and illogical. 2 Bish. Crim. Proc. [3 Ed.], secs. 315–333; 2 Bish. New. Crim. Proc., secs. 333–318; *State v. Gilmore*, 110 Mo. 1; *State v. Adams*, 108 Mo. 211 and 212. Obtaining goods by means of a fraudulent pretense has more elements of larceny than embezzlement has. Thus Hawkins in his Pleas of Crown, 145, says: "And it seems that where the property is obtained with a *preconcerted design to steal it*, the possession is supposed to continue with the true owner whatever may be the means or the pretense under which the property is obtained." And many well considered American cases hold such a taking larceny. *Grunson v. State*, 89 Ind. 533; *Smith v. People*, 53 N. Y. 111; *Welsh v. People*, 17 Ill. 339; 2 Bish. Crim. Law, sec. 813. There is no error in thus concluding an indictment under this section. But a complete answer to this contention is found in the fact that the jury did not find defendant guilty of larceny. No attempt was made to quash the indictment for duplicity; no motion was made to require the State to elect; and it is now generally held that it is too late after verdict to make this objection. *State v. Armstrong*, 106 Mo. 395; 1 Bish. New Crim. Proc. sec. 443, par. 3.

II. No error was committed in permitting Mr. Willock to state that the terms on which the eggs were sold to defendant were "Cash. Spot cash at my door." "*Q.* To be paid on delivery?" "*A.* Yes, sir." That

defendant claimed that Willock had this sale confused with another sale which he admits was for cash on delivery, does not affect the question. That was a matter of argument to the jury.

The evidence in regard to the printed heads on his bills was a matter to be weighed by the jury, not this court. It did not follow conclusively that because Willock used an ordinary printed heading (stating all bills must be paid by a certain time) to make out the account against defendant, that it could not have been a sale for cash on delivery. All these circumstances and their explanation went to the credit, not the competency, of the witness.

III.   Neither do we think error was committed in permitting the State to prove by witnesses Howe, Hilt, Dunkeson, Phillips, Townsend, Hamblin and Pudge that on the same day in the same city the defendant made similar contracts with them; got their goods, to the extent of several car loads and did not pay them for them.   The State offered this evidence to show a common fraudulent purpose and intent on the part of defendant to gather together a large quantity of butter and eggs on promises to pay cash for the same and having shipped the goods beyond the reach of these creditors failed to pay them for these supplies.   This evidence was followed up by testimony that defendant absconded from Kansas City and went to Kansas and remained away until Wednesday evening succeeding the Saturday on which he obtained the goods and shipped them out to Boston.   After waiting sufficient time to allow the goods to reach Boston defendant returned to Kansas City but avoided his place of business.   The evidence is overwhelming that he had fully determined upon quitting business.   That the evidence of these contemporaneous purchases and failures to pay others whose goods he had thus obtained was admissible to

show a fraudulent purpose we think is now too well settled to be questioned.

In State v. Myers, 82 Mo. 558, Judge PHILIPS, then a commissioner of this court, in an exhaustive review of both English and American authorities, deduced the conclusion that, while as a general proposition a distinct crime for which the party might be separately proceeded against could not be given in evidence against the prisoner on trial for a single offense, this well settled rule has its exceptions equally well settled. He maintains this view of the law with quotations from the authorities, among others the language of Judge STORY in Wood v. U. S., 16 Pet. 342, as follows: "The question was one of fraudulent intent or not, and upon questions of that sort, where the intent of the party is the matter in issue, it has always been deemed allowable, as well in criminal as civil cases, to introduce evidence of other acts and doings of the party of a kindred character, in order to illustrate or establish his intent or motive in the particular act directly in judgment." State v. Myers on this point has been consistently followed and adhered to by this court in subsequent decisions. State v. Cooper, 85 Mo. 256; State v. Bayne, 88 Mo. 604; State v. Sarony, 95 Mo. 349; State v. Balch, 136 Mo. 103.

IV. The evidence tendered by defendant of a letter from Wilson & Johnson of Boston to the Interstate National Bank and letters from Boston banks, as to the standing of Wilson & Johnson, of Boston, and defendant's course of dealing with the bank, and the telegram of Wilson & Johnson to the bank four days after defendant's failure, declining to further honor defendant's drafts, was all properly excluded. It had no possible relevancy to the question at issue. The State was bound to show these goods were to be paid for on delivery. If this was established it was entirely

immaterial what arrangements defendant had with other persons. If they failed to furnish him the money he knew that fact when he received the goods and simple honesty required him to inform Willock before taking the goods. On the other hand if defendant was not to pay cash, this evidence was immaterial because he was guilty of no crime by merely failing to pay for goods bought on credit. Equally inadmissible was the offer to prove by defendant that he intended to tender Willock a check for these eggs which in fact he never tendered and which would have been worthless if tendered and accepted. So also were other self-serving statements to Brady and others.

V. We have carefully gone over the instructions given by the court. They fully cover the law of the case, and it is unnecessary to encumber the report of the case with them. The instructions asked by the defendant were properly refused. They were not the law and were not based upon any testimony justifying the court in giving them.

If this statute is ever to be enforced this seems to be a most appropriate case. Cases are rare in which the fraudulent conduct of a defendant has been so thoroughly exposed. Having examined this record *ab ovo* we think the verdict is in accordance with the evidence, and the judgment is affirmed. SHERWOOD and BURGESS, JJ., concur.