THE STATE v. JOHN W. ROBERTS, Appellant.

Division Two, March 5, 1907.

1. INSUFFICIENT INFORMATION: False Pretense: Exchange of Property for Lands: Abstract and Deed. Defendant and others were charged with obtaining personal property by false pretense in exchange for lands which they did not own, on false deeds and false abstract. *Held*, that the information which attempts to set up and plead as a false token an abstract of title to the land, without alleging and charging that defendants feloniously, designedly and falsely pretended that it was a true abstract and correctly represented the title, is insufficient.

2. ——: ——: ——: ——: Conclusion: "By Virtue of the Premises." The information alleges that defendants falsely and feloniously pretended to the prosecuting witness that one of the defendants was then and there the owner of said real estate, "by virtue of the premises, to-wit," and then sets forth the specific pretenses made, thereby pleading the former allegation as a conclusion derived from the specifications, without

charging that the specified pretenses were designedly, falsely and feloniously made. *Held*, that the words "by virtue of the premises, to-wit," are of no significance and have no place in the information and should be entirely disregarded as surplusage.

3. ———: ———: ———: ———: Delivery. Where 'the information alleges that the prosecuting witness sold and delivered his property in exchange for the pretended conveyance, it sufficiently charges the delivery to and receipt by him of the deed.

4. ———: ———: Scienter. The *scienter* of an information, which sets out certain facts which show that defendants had no title to the land and then charges them to be false, and immediately follows with, "all of which they, the said defendants, and each of them, then and there well knew," means that they knew such facts to be false, and is sufficient.

5. ———: ———: Instruction: In Language of Defective Information. An instruction which is almost a literal copy of the information is defective for the same reason that the information is.

6. ———: ———: ———: ———: Too Long. An instruction in almost the same language as a long information which in detail charges false pretense, is too long. Short, pointed instructions are much better.

7. FALSE PRETENSE: Evidence: Like Transaction. Evidence that defendants by false pretense effected an exchange of lands they did not own for the property of other persons than the prosecuting witness, under like circumstances, on the same day, or about the same time, whether prior thereto or afterwards, is admissible as tending to prove the common intent upon defendants' part to cheat and defraud.

8. ———: Conspiracy: Declarations. That the acts and declarations of one conspirator may be admitted in evidence against his co-conspirators, it must first be made to appear that a conspiracy existed and that such acts and declarations were in furtherance of the common design. But to justify the admission of such evidence, the proof, in the first place, need only show, prima-facie, in the opinion of the judge, that the conspiracy existed. Thereafter, the question of the actual existence of the conspiracy is for the consideration of the jury.

9. ———: ———: How Shown. A conspiracy may be shown by circumstancial evidence alone, and in the reception of such evidence great latitude is allowed.

10. ———: ———: Declarations and Acts: How Far Admissible. Declarations of one conspirator against another made after the consummation of the common enterprise are not admissible;

State v. Roberts.

but any admission or declaration made up to that time by either one of the conspirators is admissible against the others. And where Turner sent for the prosecuting witness, who wanted to dispose of certain household furniture, and told him Gibbs would exchange him Texas county land for it, and Gibbs exhibited a deed and abstract, which Turner pronounced good, and directed the witness to go to defendant, who he represented loaned money on such land, and he did so and defendant examined the deed and abstract and told him he would make the loan, but both the deed and abstract must first be recorded in Texas county, and when papers came back the money would be paid, and before they were returned to him Gibbs had taken possession of witness's property and turned it over to another, the common enterprise was not ended until defendant had refused to make the promised loan upon the land, and up to that time any act, statement or admission made by either Gibbs, Turner or defendant was admissible in the trial of any one of them. And any statement, admission, declaration or act of defendant, made or done, whether before or after that, was admissible against him.

11. ——: ——: Defendant's Acts and Admissions. Any act done, or declaration or admission made by defendant, at any time, with respect to the obtaining of the prosecuting witness's property by false pretense, is admissible against himself, not primarily for the purpose of showing that a conspiracy existed between him and his associates to get the property, but for the purpose of showing the part he took in defrauding the witness, in pursuance of the plan formed between him and his co-conspirators to defraud and cheat.

12. ——: ——: Incriminating Others. Acts, statements and admissions of a defendant upon trial, which may tend to connect him with the offense with which he is charged, are not inadmissible, because, forsooth, they may tend to incriminate some other person not upon trial.

Appeal from Jackson Criminal Court.—*Hon. John W. Wofford,* Judge.

REVERSED AND REMANDED.

*Reed, Yates, Mastin & Howell* and *Burks Hamner* for appellant.

(1) The court should have sustained defendant's demurrer to the information, and motion to quash.

The information charges that the defendant did falsely, etc., pretend and say certain things alleged therein— "by virtue of the premises, to-wit:" and then specially sets forth the specific pretenses, which it does not allege were designedly, feloniously and falsely made. The information charges that a false abstract was exhibited, but fails to charge that defendant designedly, feloniously and falsely pretended and said that it was true, etc. Nor does the information allege that the deed for the land was delivered to S. L. Tolly; the scienter is imperfectly alleged. Nor can the covenants of a warranty deed be the basis of an information for false pretenses. State v. Bradley, 68 Mo. 140; Kelley's Crim. Prac. (2 Ed.), 699, p. 481; State v. Janson, 80 Mo. 98; State v. Pickett, 174 Mo. 663; State v. Stowe, 132 Mo. 199; State v. Turley, 142 Mo. 403. (2) The court erred in giving instruction 1 on behalf of the State, in that the jury were instructed if they found that the defendant "either alone or acting in concert with another or others did then and there pretend and say to the said S. L. Tolly that the abstract was a full, true and correct statement of all conveyances from the United States patent to the date of June 15, 1904, in the county of Texas and State of Missouri affecting the title to said land so situate as aforesaid." In this instruction the court failed to instruct the jury that they must find that the defendant "did then and there designedly, feloniously and falsely pretend and say to the said S. L. Tolly." State v. Bradley, 68 Mo. 140; State v. Pickett, 174 Mo. 663. This instruction was copied from the information, without adapting its phraseology to the uses of an instruction. (3) Said instruction is further erroneous in that the jury were instructed that if they found that the defendant "did then and there designedly, feloniously and falsely pretend and say to the said S. L. Tolly that W. S. Gibbs was the owner of said real es-

tate and had good right to sell the same and could pass good title thereto to said S. L. Tolly . . . by virtue of the premises, to-wit; and setting forth the statements that were alleged in the information, but not shown to have been made to Tolly, the same statements and premises being matters of statement of great length, and being construed in said instruction to be the same as the language above quoted from said instruction, and the jury not being required by said instruction to find that any of the matters designated in said premises were 'falsely, designedly and feloniously said and pretended by the defendant or others acting in concert with him.'" State v. Bradley, 68 Mo. 140; State v. Pickett, 174 Mo. 663; 3 Chitty, Crim. Law (2 Ed.), sec. 999. (4) Instruction 1 is of too great length, and the language thereof was calculated to confuse and mislead the jury. (5) The court erred in refusing to give instruction 1 on behalf of defendant—it appearing by the evidence that the transaction between between Gibbs and Turner and Mrs. M. E. Coleman, the mother of the witness Elrod, occurred after the date of the transaction between Gibbs and Turner and the witness S. L. Tolly—and the declarations of Gibbs and Turner as to the Elrod transaction were made after the transaction of Tolly had been concluded. Said instruction should have been given for the further reason that the declarations by which the Elrod sale was shown were made about a different transaction. (6) The declarations of Turner and Gibbs were wholly incompetent as against the defendant Roberts. No evidence was introduced by the State to show a conspiracy. State v. Daubert, 42 Mo. 239; State v. Walker, 98 Mo. 95; State v. Duncan, 64 Mo. 262; State v. Ross, 29 Mo. 32; State v. Boatright, 182 Mo. 33; State v. Kennedy, 177 Mo. 98. (7) The court erred in overruling defendant's objection to the admission of the declarations of Turner and Gibbs. The court stated in ruling on defendant's ob-

jections: "It isn't binding on him unless there is in the opinion of the jury—and it is finally left to them—a conspiracy proven." State v. Daubert, 42 Mo. 239; State v. Kennedy, 177 Mo. 98. (8) The court erred in admitting in evidence, over the objection of defendant, the warranty deed of Lou R. Cornell to Lena Tolly and S. L. Tolly, it not appearing that defendant made any statements in reference to said deed, and it not appearing by the declarations of Turner and Gibbs or otherwise that defendant knew of such a deed. The covenants of a warranty deed are not a basis for an information for false pretenses. State v. Chunn, 19 Mo. 233; State v. Evers, 49 Mo. 545. (9) There was no evidence tending to show a conspiracy between defendant and Turner and Gibbs. Defendant's instruction in the nature of demurrer to the evidence should have been given. State v. Daubert, 42 Mo. 239; State v. Ross, 29 Mo. 32; State v. Kennedy, 177 Mo. 98; (10) The court erred in refusing to permit defendant to show that the property was owned by Lena Tolly and not by S. L. Tolly, as alleged in the information. The defendant was entitled to prove this fact, and especially so in the light of the fact that the court instructed the jury on ownership. If Lena Tolly owned the goods, then there was a variance between the proof and information and defendant should have been discharged by the court. State v. Reynolds, 106 Mo. 146; Kelley's Crim. Pr., sec. 701, p. 481. (11) The court should have given defendant a reasonable time in which to meet the testimony of the witnesses Grant and Swinde. They were material witnesses indorsed on the information after the trial began. State v. Roy, 83 Mo. 268; State v. Nettles, 153 Mo. 464; State v. Henderson, 186 Mo. 473; State v. Bailey, 190 Mo. 257; State v. Barrington, 198 Mo. 23.

*Herbert S. Hadley,* Attorney-General, and *Frank Blake,* Assistant Attorney-General, for the State.

(1)   The information is criticised by counsel for appellant.   The criticism seems to be leveled against the use of the words "by virtue of the following premises, to-wit."   The words "designedly, feloniously and falsely" are to be considered as running through all the allegations following the words "by virtue of the premises, to-wit."   The words "by virtue of the premises, to-wit," may be treated as surplusage.   The fact that such words are inserted does not weaken or invalidate the information.   The false pretenses were so numerous and the whole scheme was so complicated, that the prosecuting attorney could not have set them out with certainty and in the specific manner required by the law, without using words similar to the words "by virtue of the premises."   The information is sufficient: the *scienter* is expressly averred in the last clause thereof. State v. Bradley, 68 Mo. 140; State v. Smallwood, 68 Mo. 192; State v. Willard, 109 Mo. 247; State v. Keyes, 196 Mo. 136; R. S. 1899, sec. 1927.   (2)   One who enters into a conspiracy is deemed in law a party to all acts done by any of the conspirators before or after he enters into such conspiracy, if such acts are in furtherance of the common design.   State v. Walker, 98 Mo. 95; State v. Daubert, 42 Mo. 239; State v. Duncan, 64 Mo. 262; State v. Boatright, 182 Mo. 33.   The rule requiring a foundation to be first laid, to establish prima-facie the fact of conspiracy, before the declarations of one of the conspirators can be admitted, is not an inflexible rule.   The order of proof and the conduct of the trial are matters within the discretion of the trial judge.   State v. Rose, 29 Mo. 51; State v. Reed, 137 Mo. 134; State v. Vanderburg, 159 Mo. 238.   (3)   Counsel for appellant cite many authorities on the proposition that the acts or declarations of one conspirator made

after the common enterprise is ended, are not admissible against the others, unless made in their presence. This rule is well settled, but it has no application to the case at bar. There was no declaration made by Gibbs and Turner after the enterprise was ended, admitted in evidence. The evidence appellant complains of was the declarations made by the defendant himself, and the rule invoked by counsel for appellant does not prevent the admission of statements and declarations made by the defendant himself after the enterprise is ended. The status of the defendant, as to his own admissions, is not altered by the above rule in reference to the inadmissibility of declarations of one conspirator against another conspirator. (4) In a prosecution for obtaining property by false pretenses, the acts of defendant similar to the one for which defendant is being tried, committed near the same time and in the same city, are admissible against him for the purpose of showing the intent with which the act charged was done. State v. Myers, 82 Mo. 558; State v. Bayne, 88 Mo. 604; State v. Wilson, 143 Mo. 334; State v. Rosenberg, 162 Mo. 358. (5) Complaint is made also because the names of Swinde and Grant were not indorsed upon the information until after the trial had begun. The rule seems to be that a witness may be examined on behalf of the State, although his name is not indorsed upon the indictment or information, but the State should not be permitted to purposely refrain from indorsing the names of material witnesses upon the information and then introduce them on the trial. The testimony of the witness named could not have amounted to a surprise, because the information alleged that the land in controversy was not owned by the defendants. State v. Barrington, 198 Mo. 23; State v. Shreve, 137 Mo. 5; State v. Henderson, 186 Mo. 473; State v. Yate, 156 Mo. 130; State v. Smith, 137 Mo. 25; State v. Nettles, 153 Mo. 464. The prosecuting attorney did not learn of

the names of the witnesses until after the trial had begun. Grant testified that he was the owner of the land in controversy, and the witness Swinde that he had examined the records of Texas county, and determined the falsity of the abstract. The testimony of either witness might be considered as cumulative, in view of the fact that ownership of the land was otherwise shown by the introduction in evidence of the deeds showing title in persons other than Gibbs. (6) Counsel contends that he was not permitted to prove ownership of the property in the witness Lena Tolly. The witness had testified that she and her husband owned the property; that it was purchased with the money of her husband, S. L. Tolly. Under the law, proof even of special ownership will sustain an averment as to ownership. (7) Counsel for appellant admit that the false pretense as to the abstract and the deed was proved. This was the gist of the transaction, and even if other allegations are made in the information, since this allegation is conceded to have been established by the proof, the information is sustained. State v. Keyes, 196 Mo. 163.

FOX, P. J.—On the 27th day of February, 1905, the prosecuting attorney of Jackson county filed an information in the criminal court of said county, at Kansas City, charging the defendant and one James B. Turner and W. S. Gibbs with obtaining certain household goods and furniture from one S. L. Tolly, by false pretenses.

The information, omitting the formal parts, is as follows:

"Now comes Isaac B. Kimbrell, prosecuting attorney for the State of Missouri and in and for the body of the county of Jackson and upon his oath informs the court that John W. Roberts, James B. Turner and W. S. Gibbs, and each of them on the — day of July, 1904, at the county of Jackson and State of Missouri con-

triving, designing and intending to cheat and defraud one S. L. Tolly of his goods, wares and merchandise did apply to and request the said S. L. Tolly to sell and deliver to the said John W. Roberts, James B. Turner and W. S. Gibbs certain furniture and household goods consisting of beds, chairs, tables, dressers, couches, carpets, kitchen utensils, pictures and other goods and chattels being all the personal property then being at a certain rooming house at 1123 Oak street, Kansas City, Jackson county, Missouri, a more complete description of which said property is to the prosecuting attorney unknown for the reason that said property has ever since said day been in the possession of the defendants herein, in exchange for the following described real estate situate and being in the county of Texas and State of Missouri, to-wit, all the southwest quarter of section nine, township twenty-eight, range eleven, containing 160 acres more or less; and to induce said S. L. Tolly to make such trade and exchange as aforesaid and to effect their said scheme and design to cheat and defraud the said S. L. Tolly, they the said John W. Roberts, James B. Turner and W. S. Gibbs and each of them did then and there designedly, feloniously and falsely pretend and say to the said S. L. Tolly that the said W. S. Gibbs was then and there the owner of said real estate so situate as aforesaid and then and there had good right to sell the same and could pass good title thereto to the said S. L. Tolly or to such person as the said S. L. Tolly would designate by virtue of the following premises, to-wit, that on the 15th day of June, 1904, said real estate was owned by one Lou R. Cornell and G. W. Cornell, her husband, and that on said 15th day of June, 1904, said Lou R. Cornell and G. W. Cornell had good right to sell the same and pass good title thereto, and that on said 15th day of June, 1904, said Lou R. Cornell and G. W. Cornell by a certain warranty deed fully executed in blank

as to the grantee thereto and delivered to him the said
W. S. Gibbs conveyed to him, the said W. S. Gibbs, good
title to said real estate so situate as aforesaid, and that
the said Lou R. Cornell and G. W. Cornell on said 15th
day of June, 1904, at the time of the execution and
delivery of said deed hereinafter set forth had author-
ized him the said W. S. Gibbs at any time to fill in as
grantee of said land in the blank space left in said
deed for the name of the grantee thereof the name of
any person to whom said W. S. Gibbs should desire to
sell said land, which said deed is of the purport follow-
ing, to-wit:

### "WARRANTY DEED.

"This indenture made on the 15th day of June,
A. D. one thousand, nine hundred and four by and
between Lou R. Cornell of the county of Jackson and
State of Missouri, parties of the first part and
.............. of the county of .........., State of
.........., part — of the second part.

"Witnesseth; that said parties of the first part in
consideration of the sum of exchange of property and
one dollar, to-wit, paid by the said part— of the second
part the receipt of which is hereby acknowledged do —
by these presents bargain, sell, convey and confirm unto
the said part— of the second part — heirs and assigns,
the following described lot—, tract— or parcel— of
land lying, being and situate in the county of Texas,
and State of Missouri, to-wit:

"All the southwest quarter (1-4) of section nine
(9) township twenty-eight (28), range eleven (11), con-
taining 160 acres more or less —, to have and to hold
the premises aforesaid with all and singular the rights
and privileges and appurtenances and immunities
thereto belonging or in any wise appertaining unto
the said part— of the second part, and unto —
heirs and assigns forever; the grantor— hereby cov-
enanting that the said premises are free and clear from

any incumbrances done or suffered by —, and the said grantor will warrant and defend the title to the said premises unto the said part— of the second part and unto — heirs and assigns forever against the lawful claims and demands of all persons claiming under — said grantor— and not otherwise.

"In witness whereof the said parties has hereunto set their hand the day and year above written.
(Signed) "Lou R. Cornell,
"G. W. Cornell.

"And the said W. S. Gibbs could then and there pass good title to said real estate so situate as aforesaid to the said S. L. Tolly or to such person as the said S. L. Tolly should designate by writing the name of said S. L. Tolly or such other person so designated by the said S. L. Tolly in the blank space left in said deed for the name of the grantee thereof and further to induce the said S. L. Tolly to make such sale and exchange as aforesaid and to effect their said scheme and design to cheat and defraud the said S. L. Tolly they the said John W. Roberts, James B. Turner and W. S. Gibbs and each of them did then and there unlawfully, feloniously and designedly exhibit to the said S. L. Tolly a certain false and fraudulent abstract of title to said property so situate as aforesaid of the purport following, to-wit:

" 'Abstract of title to the south half (1-2) and the northwest quarter of section nine (9) township twenty-eight (28) range eleven (11) Texas county, Missouri.

" 'United States of America to J. S. Smith.

" 'Patent dated June 7, 1858, consideration cash, entry recorded January 5, 1861, in book "P" page 97 with other lands.

" 'J. S. Smith and Mary J. Smith, his wife, to T. J. Dickey. Warrantee deed dated January 5, 1861, acknowledged before a Notary Public, consideration $385, recorded March 16, 1861, in book "H" page 163, with other lands;

" 'T. J. Dickey and Julia Dickey, his wife, to Henry Stubbs. Warrantee deed dated September 25, 1878, consideration $517 acknowledged before a Notary Public, recorded January 2, 1873, in book "6," page 249, with other lands.

" 'Henry Stubbs, single, to J. H. Carter. Warrantee deed dated August 9, 1887, consideration $1,000, acknowledged before a Notary Public, recorded August 9, 1887, in book "98," page 315.

(Conveys land in caption.)

" 'J. H. Carter and his wife, Mary Carter, to D. J. Daniels. Warrantee deed dated February 15, 1893, consideration $1 and exchange of property acknowledged before a Notary Public, recorded August 26, 1893.

(Conveys land in caption.)

" 'D. J. Daniels, single, to Lou R. Cornell. Warrantee deed dated July 17, 1903, consideration $1 and exchange of property acknowledged before a Notary Public, recorded January 17, 1904, with other lands.

" 'The foregoing claim of title numbering from one to six contains all the conveyances that are of record in Texas county, Missouri, that affect the title to the land described in the caption, and I further certify that there are not judgments against any of the parties named herein that are a lien against said land. All taxes are paid that are due.

(Signed)                      " 'J. H. JONES.

" 'June 15, 1904.

" 'Houston, Texas county, Missouri.'

"And the said John W. Roberts, James B. Turner and W. S. Gibbs did then and there pretend and say to the said S. L. Tolly that the said abstract above set out was a full, true and correct statement of all conveyances of said land from United States patent to said land to the date of June 15, 1904, that were of

record in the county of Texas, State of Missouri, affecting the title to said land so situate as aforesaid and that by virtue of the various conveyances so set out in said abstract Lou R. Cornell and her husband G. W. Cornell were on said 15th day of June, 1904, the owners of said real estate so situate as aforesaid and on said day had good right to sell the same and pass good title thereto and that the said Lou R. Cornell in said abstract named as the grantee in the warrantee deed from the said D. J. Daniels to said Lou R. Cornell and the said Lou R. Cornell whose name was subscribed to said warrantee deed dated June 15, 1904, hereinbefore set forth were one and the same person and that the fact that the name was spelled Connell in said abstract and Cornell in said deed hereinbefore set forth was the result of merely a clerical error and in no way affects the title to said land, and the said S. L. Tolly believing the said false pretenses and representations so made as aforesaid by the said John W. Roberts, James B. Turner and W. S. Gibbs and each of them to be true and relying upon and being deceived by, such representations and pretenses and said false and fraudulent abstract was induced by said false pretenses and representations and said false and fraudulent abstract, to then and there sell and deliver and did then and there sell and deliver to said John W. Roberts, James B. Turner and W. S. Gibbs said personal property so located at said rooming house, at 1123 Oak street, a complete description of which is hereinbefore set forth of the value of six hundred dollars, of the goods and property of the said S. L. Tolly in exchange for a pretended conveyance by the said W. S. Gibbs of said Texas county land so situate as aforesaid to the said S. L. Tolly and Lena Tolly, his wife, which said pretended conveyance of said land was then and there executed by the said John W. Roberts, James B. Turner and W. S. Gibbs and each of them by then and there writing in

said deed hereinbefore set forth in the blank space left therein for the name of the grantee thereof, the names of the said S. L. Tolly and Lena Tolly his wife and so the said John W. Roberts, James B. Turner and W. S. Gibbs, and each of them by means of the said false pretenses and representations so made as aforesaid and by means and the use of said false and fraudulent abstract aforesaid, unlawfully, feloniously and designedly did obtain of and receive from the said S. L. Tolly the goods and property of the said S. L. Tolly hereinbefore described of the value of six hundred dollars, with the felonious intent him the said S. L. Tolly then and there to cheat and defraud of the same; whereas in truth and in fact the said W. S. Gibbs was not then and there the owner of the said Texas county land or any part thereof and did not then and there have any right to sell and convey the same or any part thereof, and pass good title thereto by writing in the blank space left in said deed hereinbefore set forth for the name of the grantee thereof the name of said S. L. Tolly or other person or in any other manner whatever, nor did the said Lou R. Cornell and G. W. Cornell, her husband, or either of them own said land or any part thereof on said June 15, 1904, or at any other time, nor did they or either of them at any time have the right to sell and convey said land and pass good title thereto; and in truth and in fact said abstract hereinbefore set forth was not then and there either a full, true or correct statement of all conveyances of said land from the United States patent thereof to the date of June 15, 1904, that were of record in the county of Texas and the State of Missouri, but in truth and in fact each and every pretended conveyance in said abstract was then and there false and not a single conveyance in said abstract then and there set forth was ever made and recorded in said Texas county, Missouri, and in truth and in fact said abstract did not then and there

show a single conveyance of said land that was ever actually made and recorded in said Texas county, Missouri, all of which they the said John W. Roberts, James B. Turner and W. S. Gibbs and each of them then and there well knew, against the peace and dignity of the State.''

Upon application of the defendant and his co-indictees, a severance was granted, and on the 24th day of January, 1906, after several continuances, the defendant was placed upon trial, the State having elected to try him first. Defendant filed a demurrer to the information, also a motion to quash the same, both of which were overruled by the court. The trial resulted in the conviction of defendant, and his punishment was assessed at five years in the penitentiary. Defendant's motion for a new trial and in arrest of judgment having been overruled, he appeals to this court.

The case was tried on the theory of a conspiracy between the defendant and James B. Turner and W. S. Gibbs to obtain the property described in the information by means of false pretenses and representations.

The facts developed by the testimony are about as follows: S. L. Tolly owned a rooming house at 1123 Oak street, Kansas City, which house contained eleven rooms, bedding, furniture, carpets, dishes and other utensils, the said personal property being worth about $600. Mr. Tolly and his wife on July 15, 1904, went to the office of James B. Turner in response to an invitation by Turner to call at his office for the purpose of negotiating a trade, Mr. Tolly wishing to dispose of the property alluded to. Turner represented that there was a man who had 160 acres of land in Texas county, Missouri, and who desired to trade it for a rooming house; that the man was a bachelor and wanted some place to stay at. Tolly and his wife were in Turner's office only a few minutes when W. S. Gibbs came in, and Turner said, ''This is the man that had this land, and

he will trade with you.'' The Tollys stated that they did not want to trade for land, but wanted money for the property; and Turner said that he could arrange it so that they could get money in the trade. Turner and Gibbs then exhibited a supposed abstract of and deed to the land, and Tolly said that he had never seen any papers of that kind and that this was new business to him. Turner said, referring to the papers, ''They are all right,'' and Tolly replied, ''You are in the business, you should know.'' Gibbs also said that the papers were all right and that he had just traded some property for the land; and in answer to Mr. Tolly's question as to whether the land was improved, he said there was a log house and log barn and a well thereon. Turner then said that he knew a man who loaned money on land in that section of the State, and handed the Tollys a card with the defendant's name and address thereon, his office being in the Kansas City Life building. Mr. and Mrs. Tolly went to defendant's office and asked him if he loaned money on property, and he replied that he did. They told him about this land and that they wanted a loan of $800 thereon. Defendant said he would make the loan, and told him to bring him the papers that he might see them. They went back to Turner's office for the abstract and deed and recited to Turner what defendant had said as to the loan, and Turner said that the defendant was a man of his word and would do as he had promised. After Turner had several times assured Mr. Tolly that everything was all right, the deal was closed by which Mr. Tolly and his wife parted with their said household goods and furniture and received therefor the said abstract and deed. This deed was not direct from Gibbs as grantor, but was a deed dated June 15, 1904, on which was signed the names of Lou R. Cornell and G. W. Cornell as grantors. The space in the deed for the grantee or grantees was blank, in which blank space, Gibbs stated,

he had the right to insert the names of the persons
to whom he sold the land.   Turner filled in the blank
with the names of Lena Tolly and S. L. Tolly, and
delivered them the deed which purported to convey
land described therein as the southwest quarter of sec-
tion 9, township 28, range 11, in Texas county, Mis-
souri.   The other document which was handed the
Tollys, and which was represented to them by Turner
and Gibbs as an abstract of title to the land, purported
to be an abstract of title to the south half and the north-
west quarter of section 9, township 28, range 11, in
Texas county, Missouri.   After receiving the said sup-
posed abstract and deed, and making a bill of sale to
Gibbs of their said personal property, Mr. and Mrs.
Tolly returned to the office of the defendant.   Defend-
ant looked at the documents and pointed out on a map
in his office the location of the land described in the
deed.   He said he knew the land well; that it was really
worth $2,600, and that excursion parties were going
down there nearly every day and buying up land be-
cause there was mineral underneath.   Defendant then
said that he would make the loan, but that both the
deed and abstract would first have to be recorded in
Texas county, and that when papers came back the
money would be paid; so Tolly and his wife left the
papers with him, he giving them a receipt therefor.
They went to defendant's office several times to see if
the papers had returned, but they did not come back
for about two weeks, the defendant giving one excuse
or another for the delay.   In the meantime Gibbs had
taken possession of the rooming house and turned the
property mentioned in the information over to another.
No money was paid the Tollys by defendant; neither
did they, or either of them, get possession of the said
land, nor get the rooming house or any of the personal
property back.   The said deed and abstract were intro-

duced in evidence and identified by Mr. and Mrs. Tolly as the papers in question.

The testimony of Mr. and Mrs. Tolly with reference to the whole transaction was substantially the same, differing only in a few details. While he said that Turner had been to see them and had requested them to come to his office about the proposed trade, Mrs. Tolly testified, in addition, that Gibbs went out to look at the house, and that he said, "You go down to Mr. Turner's office, and he will see you and tell you my proposition; he will tell you about the trade." She also testified that the first time Turner sent them to defendant's office they were unable to find it, and that while looking for the office she saw Gibbs go in a door which she afterwards learned was the door to the defendant's office. That being unable to locate defendant's office the first time, they went back to Turner, and he then gave them a card with defendant's name and address thereon.

The State placed on the witness stand Silas W. Grant, who testified that he had lived at Cabool, Texas county, for twenty years; that he was then the owner and in possession of the west half of section 9, township 28, range 11, in Texas county, and had been in possession of it since 1902; that he never knew a woman in Texas county named Lou R. Cornell, nor any man there by the name of W. S. Gibbs. The witness identified a certified copy of a deed dated November 3, 1902, from David J. Adams to Silas W. Grant, for the west half of section 9, township 28, range 11, in Texas county, containing 320 acres, certified by the recorder of deeds of Texas county as a true copy of a warranty deed filed for record in his office on the 17th day of December, 1902.

Milton Swinde, an attorney, testified that he took the abstract referred to to Texas county, and made an examination of the records in the recorder's office there,

with reference to the supposed conveyances mentioned in the abstract, but that he could not find any such conveyances of record.

C. W. Elrod testified for the State, detailing a transaction between his mother, Margaret E. Coleman, and the three parties informed against in this case, Roberts, Turner and Gibbs, the details of which were in almost every respect similar to those of this case, and by which his mother was induced to part with a stock of groceries worth about $800 for which she received nothing save a worthless abstract and deed. Elrod testified that the said transaction was consummated on the forenoon of July 15, 1904, which was the same day the Tollys parted with their property.

At the conclusion of the State's evidence the defendant demurred thereto on the ground that no evidence had been shown in the case connecting the defendant with the pretenses alleged to have been made by him in the information, and that no evidence had been introduced in the case showing that a conspiracy existed between the defendant, John W. Roberts, and W. S. Gibbs and J. B. Turner, and by reason of the variance between the proof and the allegations of the information. The court overruled the demurrer, and defendant excepted.

OPINION.

It is insisted for defendant that the information is fatally defective for several reasons, the first being that it attempts to set up and plead as a false token an abstract of title to certain land described in the information, but wholly fails to allege and charge that the defendant feloniously, designedly and falsely pretended that it was a true abstract and correctly represented the title. From a careful reading of the information, it is apparent that it attempts to set up and plead as a false token an abstract of title to the land in question, without alleging and charging that the

defendants named ·in the information feloniously, designedly and falsely pretended that it was a true abstract and correctly represented the title. The nearest approach to this essential averment is that defendant "did then and there unlawfully, feloniously and designedly *exhibit* to said S. L. Tolly a certain false and fraudulent abstract of title to said property." It is true that the information does allege that "said John W. Roberts, James B. Turner and W. S. Gibbs did then and there *pretend* and say to said S. L. Tolly that the said abstract above set out was a full, true and correct statement of all conveyances of said land," etc., and then properly negatives the truth of such pretenses and representations, as well as the correctness of the abstract, but it nowhere alleges that the defendants feloniously, designedly and falsely pretended that the abstract was a true one, or that it correctly represented the title. State v. Bradley, 68 Mo. 142, was an indictment for obtaining goods by false pretenses in exchange for certain land. In that indictment, as in this information, the attempt was made to set out two false pretenses, one in relation to the title to the land, and one in relation to the abstract. The false representation charged to have been made by the defendant in regard to the abstract of title to the land was that he had an abstract prepared by one Daniel G. Saunders, showing the title to be in him. This representation was not negatived in the indictment. The pleader did not aver that this representation was untrue, but he averred that the abstract itself was false and untrue in that it showed the title to be in the defendant. The court said: "If such was the fact, this abstract should have been set out as a 'false token or writing,' and the defendant should have been charged with designedly, feloniously and falsely pretending that it was a true abstract and correctly represented the title to be in him; and this charge should have been accompanied with a proper

negative, and an averment of the *scienter*." [State v. Pickett, 174 Mo. 663.]

Another objection urged against the information is that it alleges that the defendants feloniously and falsely pretended and said to the said S. L. Tolly that the said W. S. Gibbs was then and there the owner of said real estate, "by virtue of the premises, to-wit;" and then sets forth the specific pretenses that were made, thereby pleading the former allegation of the information as a conclusion derived from the latter pretenses specifically set forth, and which said latter specified pretenses were not alleged to have been designedly, feloniously and falsely made.

We do not think the words "by virtue of the premises, to-wit," are of any significance or that they have any place in the information. They may, therefore, be entirely disregarded as surplusage. As used, they seem to be meaningless, and do not in any way affect the information.

It is also insisted that the information is fatally defective because it does not allege that the deed for the land was delivered to and received by S. L. Tolly in exchange for the personal property alleged to have been obtained from him. But it does allege that Tolly did sell and deliver his property in exchange for said alleged pretended conveyance, which means the same thing, the terms "deliver" and "exchange" only being used in an inverse order.

The information, it is contended, is also defective for the additional reason that the *scienter* is imperfectly alleged, in the conclusion of the information, in the general words, "all of which they, the said John W. Roberts, James B. Turner and W. S. Gibbs, and each of them, then and there well knew."

In State v. Janson, 80 Mo. 97, which was a prosecution for obtaining money by false pretenses, it was held that the indictment, which set out the pretenses, nega-

tived their truth, and concluded with an averment of the *scienter* in words similar to those used in this case, was sufficient after verdict. It will be noted that that case does not hold, in express terms, that such averment of the *scienter* would not be sufficient before verdict, and it is only by implication that it can be so held. But even if it should be so held, it would not affect the case at bar; for, after alleging that said Roberts, Turner and Gibbs, and each of them, by means of said false pretenses and representations so made as aforesaid, and by means of the use of said false abstract aforesaid, unlawfully, feloniously and designedly, did obtain and receive from the said S. L. Tolly the goods and property of the said S. L. Tolly hereinbefore described of the value of six hundred dollars, with the felonious intent him, the said S. L. Tolly, then and there to cheat and defraud of the same, the information goes further, and alleges, "Whereas in truth and in fact the said W. S. Gibbs was not then and there the owner of the said Texas county land or any part thereof, and did not then and there have any right to sell and convey the same or any part thereof and pass good title thereto by writing in the blank space left in said deed hereinbefore set forth for the name of the grantee thereof the name of the said S. L. Tolly or other person, or in any manner whatever, nor did the said Lou R. Cornell or G. W. Cornell, her husband, or either of them, own said land or any part thereof on said June 15, 1904, or at any other time, nor did they, or either of them, at any time have the right to sell and convey said land and pass good title thereto; and in truth and in fact said abstract hereinbefore set forth was not then and there a full, true or correct statement of conveyances of said land from the United States patent thereof to the date of June 15, 1904, that were of record in the county of Texas and State of Missouri, but in truth and in fact each and every pretended conveyance

in said abstract was then and there false, and not a single conveyance in said abstract then and there set forth was ever made and recorded in said Texas county, Missouri, and in truth and in fact said abstract did not then and there show a single conveyance of said land that was ever actually made and recorded in said Texas county, Missouri, all of which they, the said John W. Roberts, James B. Turner and W. S. Gibbs, and each of them, then and there well knew, against the peace and dignity of the State." The words "then and there well knew," that is, well knew to be false the statements and representations made by said Roberts, Turner and Gibbs with respect to said land, title and abstract, was a sufficient averment of the *scienter*.

Instruction number one is predicated upon and almost a literal copy of the information, and is subject to the same criticism. It is erroneous for the same reason that the information is defective. Besides, it is entirely too long. A few short, pointed instructions are much better and much more readily comprehended than long, complex ones.

Defendant insists that the court erred in refusing to give instruction numbered 1 asked by him. It reads as follows:

"1. The court instructs the jury that any declaration made by W. S. Gibbs or J. B. Turner to any of the witnesses in this case or to any other person relative to the transfer of the grocery store of Mrs. M. E. Coleman, are not binding upon the defendant in this case and that they will wholly disregard all such declarations as have been shown in reference thereto, to have been made by them, and the court further instructs the jury that the evidence of the witness Elrod was wholly incompetent for any purpose in this case and that in finding their verdict they will disregard all of such witness's testimony."

It is argued by defendant that the transaction be-

tween Gibbs and Turner and Mrs. M. E. Coleman, the mother of witness Elrod, occurred after the date of the transaction between Gibbs and Turner and S. L. Tolly, and that the declarations of Gibbs and Turner as to the Elrod transaction were made after the transaction with Tolly had been concluded, and that this instruction should, therefore, have been given; that said instruction should have been given for the further reason that the declarations by which the Elrod sale was shown were made about a different transaction.

The record discloses that, on the 11th day of July, 1904, in response to an advertisement for the sale of a stock of groceries by Mrs. Margaret Coleman, witness Elrod's mother, J. B. Turner wrote her a note asking her to call at his office in Kansas City, and stating that he had a proposition to make that she could not afford to turn down. Next morning Elrod called at Turner's office and had a conversation with him respecting the sale of the goods, and thereafter Gibbs went to look at the goods, which were estimated to be worth from $800 to $1,000. On the forenoon of July 15, 1904, Mrs. Coleman and Elrod called at Turner's office, when the sale or exchange of the goods for Texas county land was effected, under precisely the same terms and conditions, even to the minutest details that afterwards, on the same day, were observed by the same parties, Roberts, Turner and Gibbs, in the transaction by which they obtained the household goods owned by S. L. Tolly, and with the same disastrous results to Mrs. Coleman as to Mr. Tolly. This evidence was unquestionably admissible for the purpose of showing a common fraudulent purpose and intent to cheat and defraud. [State v. Balch, 136 Mo. 103; State v. Wilson, 143 Mo. 334.] It may be observed, moreover, that the transaction between the said parties and Mrs. Coleman need not have occurred prior to the Tolly transaction, in order to render evidence thereof admissible, if it oc-

State v. Roberts.

curred on the same day or about the same time and tended to prove a common intent upon the part of said Roberts, Turner and Gibbs to cheat and defraud.

In State v. Myers, 82 Mo. 558, the question was, as in the case at bar, one of fraudulent intent, and the court quoted with approval the following from Wood v. United States, 16 Pet. 342: "The question was one of fraudulent intent or not, and upon questions of that sort, where the intent of the party is matter in issue, it has always been deemed allowable, as well in criminal as civil cases, to introduce evidence of other acts and doings of the party of a kindred character, in order to illustrate or establish his intent or motive, in the particular act directly in judgment. Indeed, in no other way would it be practicable in many cases to establish such intent or motive, for the single act, taken by itself, may not be decisive either way; but taken in connection with others of a like character and nature, the intent and motive may be demonstrated almost with a conclusive certainty. They constitute exceptions to the general rule, excluding evidence not comprehended within the issue; or rather, perhaps, it may with more certainty be said, the exception is necessarily embodied in the very substance of the rule; for whatever does legally conduce to establish the points in issue, is necessarily embraced in it, and, therefore, a proper subject of proof, whether it be direct or only presumptive."

The rule announced in the Myers case has been followed ever since. [State v. Cooper, 85 Mo. 256; State v. Bayne, 88 Mo. 604; State v. Sarony, 95 Mo. 349; State v. Balch, supra; State v. Wilson, supra.]

Defendant's next insistence is that the declarations of Turner and Gibbs were wholly incompetent as against him, and that no evidence was introduced by the State to show a conspiracy.

It is well settled that in order that the acts and

declarations of one conspirator may be admissible in evidence against his co-conspirator, it must first be made to appear that a conspiracy existed and that such acts and declarations were in furtherance of the common design. [State v. Daubert, 42 Mo. 239; State v. Walker, 98 Mo. 95; State v. Duncan, 64 Mo. 262; State v. Ross, 29 Mo. 32; Wall v. Beedy, 161 Mo. 625; State v. Boatright, 182 Mo. 33; State v. Kennedy, 177 Mo. 98.] But in order to justify the admission of such evidence, the proof, in the first place, need only show, prima-facie, in the opinion of the judge, that the conspiracy existed. Thereafter the question of actual existence of such conspiracy is for the consideration of the jury. [State v. Kennedy, supra.]

We are unable to agree that the evidence in this case does not tend to show any connection or conspiracy between the defendant and Turner and Gibbs. That there was no direct or positive evidence may be true, but direct proof was not indispensable. A conspiracy may be shown by circumstantial evidence alone, and in the reception of such evidence great latitude is allowed. "It is no objection that the evidence covers a great many transactions and extends over a long period of time, provided, however, that the facts shown have some bearing upon, and tendency to prove, the ultimate fact at issue. But much discretion is left to the trial court, in a case depending on circumstantial evidence, and its rulings will be sustained if the testimony which is admitted tends even remotely to establish the ultimate fact." [8 Cyc. Law and Procedure, 678.] The facts and circumstances stated in evidence tended strongly to show a conspiracy between Roberts, Turner and Gibbs to cheat and defraud Tolly out of his property, and that in pursuance of such conspiracy they did so. After the conspiracy was shown, the admissions, statements and acts of each conspirator, during the con-

tinuance of such conspiracy, were admissible in evidence against the others.

The purpose was to cheat and defraud Tolly out of his household goods, and in order to carry out that purpose it was necessary for the defendant to first deceive Tolly by the promise that he, defendant, would loan him $600 on the land. While the transaction, in so far as Tolly's property was concerned, was ended when he delivered the property and executed the bill of sale thereto, yet the common enterprise was not ended until defendant had refused to make Tolly the promised loan upon the land. But for this promise by defendant the sale by Tolly of his goods would not have been made. Therefore, any declaration or statement made up to that time, by either one of the conspirators in pursuance of the common design, was admissible against the others. There is no principle of law better settled than that the declarations of one co-conspirator against another made after the consummation of the common enterprise are not admissible. There does not seem to have been any statement or declaration made by either Gibbs or Turner after the common enterprise was ended admitted in evidence. But any act done, or declaration, statement or admission made by defendant at any time with respect to the obtaining of Tolly's property was admissible in evidence against himself, not primarily for the purpose of showing that a conspiracy existed between himself, Turner and Gibbs to cheat and defraud Tolly, but for the purpose of showing the part he took in defrauding Tolly of his property in pursuance of the plan formed between the conspirators to do so.

We know of no rule of law which renders inadmissible in evidence the acts, statements or admissions of a defendant upon trial for a criminal offense which may tend to connect him with the offense with which he is charged, even though such acts, statements or admis-

sions may tend to incriminate some other person not upon trial.

There are many other assignments of error made and discussed by counsel for defendant, but as they seem to be mostly without merit and exceedingly technical, and the matters complained of may not occur upon another trial of the cause, we have not thought it necessary to discuss them.

For the errors indicated the judgment is reversed and the cause remanded, in order that the information may be amended or a new information filed against defendant, if so desired by the prosecuting attorney.

All concur.