## THE STATE v. EDWARD CALVERT, Appellant.

**Division Two, February 18, 1908.**

1. **INFORMATION: Assault: Felonious.** An information that charges that defendant, in and upon one John Weak, "unlawfully and feloniously did make an assault," charges that the assault was felonious.

2. ——: ——: **Lawful Money: Uncertainty.** A contention that "seventeen dollars, lawful money of the United States, of the value of seventeen dollars," is too uncertain and indefinite, is without merit.

3. ——: **Robbery: Double Charge in One Count: Waiver.** There are two ways under the statute (Sec. 1893, R. S. 1899) by

which robbery in the first degree may be committed, one by feloniously taking the property of another from his person, or in his presence and against his will, by violence to his person, and the other by putting him in fear of some immediate injury to his person; and it is better pleading, when it is desired to charge that the robbery was committed in both ways, to state the different allegations in separate counts. But if both ways are charged together in one count conjunctively, by the use of the word "and" where the statute uses "or," and no motion to quash or to elect is made, it is too late to raise the objection in the motion in arrest or on appeal.

4. ———: ———: ———: Instruction. Defendant cannot complain because the instructions required the jury to find that the robbery was committed in both the ways charged in the information, that is, by force and violence to his person, and by putting him in fear. It was only necessary for the State to show that defendant committed the robbery in one of the two ways indicated in the statute; but if it assumed the unnecessary burden of requiring that it was committed in both ways, defendant cannot complain.

Appeal from Jackson Criminal Court.—*Hon. B. J. Casteel,* Special Judge.

Affirmed.

*W. F. Riggs* for appellant.

The information is fatally defective. It does not charge that the assault was felonious; and what is meant by "seventeen dollars lawful money of the United States, of the value of seventeen dollars" is too uncertain in an information. It will be noticed that the information is fatally defective in charging robbery by "putting in fear." State v. Crowell, 149 Mo. 395. The information does not pretend to allege that the property (whatever it was) was taken "in his presence and against his will, by putting him in fear of some immediate injury to his person," nor does it allege the assault was made feloniously. The court instructed the jury they could convict if they found that

defendant "took and carried away any money or property from his person or in his presence and against his will by putting him in fear." These two kinds of robbery ought not to be joined in the same count because the one is repugnant to the other. State v. Hesseltine, 130 Mo. 474; State v. Smith, 119 Mo. 443; State v. Crowell, 149 Mo. 395; State v. Rector, 126 Mo. 328; State v. Evans, 128 Mo. 406.

*Herbert S. Hadley*, Attorney-General, and *N. T. Gentry*, Assistant Attorney-General, for the State.

(1) Instruction 1, the only instruction complained of, is full and complete in every respect. State v. Spray, 174 Mo. 575; State v. Brown, 104 Mo. 373. (2) There was not only substantial evidence of defendant's guilt, but the evidence was overwhelmingly against him. In such a case, this court will not attempt to weigh the evidence, but will defer to the finding of the jury, as approved by the trial court. State v. Smith, 190 Mo. 706; State v. Payne, 194 Mo. 442; State v. Groves, 194 Mo. 452; State v. Williams, 186 Mo. 128; State v. Swisher, 186 Mo. 8; State v. Williams, 149 Mo. 496.

BURGESS, J.—At the September term, 1906, of the criminal court of Jackson county, the defendant, under an information filed by the prosecuting attorney of said county, was convicted of robbery in the first degree, and his punishment assessed at five years in the penitentiary. After ineffectual motions for new trial and in arrest, the defendant appealed.

The evidence on the part of the State tended to prove that John Weak, the prosecuting witness, was a dairyman, and lived near Kansas City, Missouri. About seven o'clock, on the evening of September 21, 1906, Weak went to a rooming house at No. 1425 Grand avenue, Kansas City, and rented a room for the night,

the landlady in charge being one Mary Snyder. His room not being ready for occupancy, Weak went out to the back porch where were three men drinking beer, the defendant being one of them. The defendant accosted Weak, and suggested that he purchase some beer for the crowd, whereupon Weak gave the defendant fifty cents for that purpose, and the latter left, soon afterwards returning with a bucket of beer. He poured out three glasses of beer, handing one each to Mary Snyder, Lee Planet and Joe Morris. He then went into the kitchen, and soon returned with two more glasses of beer, one of which he gave Weak and drank the other himself. Weak drank his glass of beer, and immediately complained that it was bad and not the kind he was used to drinking. He then went to his room, and the defendant followed him. Before the defendant left the porch, however, he exhibited a half-pint whiskey bottle, stating that he had put some of the whiskey into Weak's beer, and that he wanted to ''put him out.'' He further said to Lee Planet that he wanted to get what Weak had on him. While Weak was sitting in his room the defendant came in, knocked him down, choked him, and took $19.80 out of his trousers' pockets. Lee Planet and Mary Snyder both testified that they saw the defendant knock Weak down and get on top of him. Morris, who was on the back porch drinking, testified that he saw the defendant follow Weak and also heard defendant say, ''He has got money.'' Mary Snyder further testified that the defendant, after his assault upon Weak, came out on the porch and said, ''I got half a dollar off this old man''; that he then pulled out a bottle in which was a little whiskey, and said, ''I gave all of that to him but this little bit''; that she asked him why he did that, and he said, ''I needed the money.''

After the defendant left him, Weak left the house and reported the assault and robbery to the police.

About ten o'clock that night police officer Gleason met the defendant and his wife on Grand avenue, and asked the defendant if he had been to this rooming house on Grand avenue that night, and defendant assured him that he had not. The defendant was arrested next morning at his home in Armourdale and brought to the police headquarters. After being locked up, he sent the jailer for O. T. Wofford, lieutenant of police, to whom the defendant said that, if he would turn him loose, he would give the stuff back and take the first train out of the city.

The defendant testified that the Mary Snyder house was supposed to be a rooming house, but that she rented rooms for immoral purposes. He stated that Weak gave him twenty cents for beer at the time and place in question, but denied having put anything in the beer he gave Weak; that after drinking the beer he (defendant) went into one of the bed rooms, and that Weak came into the room, assaulted him and drew a knife out of his pocket; that he knocked Weak down, got on top of him and tried to take the knife from him; that Weak then went to his own room, and in a little while defendant discovered that he had gone. Defendant denied robbing the prosecuting witness, and also denied having met officer Gleason that night on Grand avenue or making the statement testified to by officer Wofford.

The prosecuting witness also testified that four days after the assault and robbery, while working at the dairy, he found $15 in bills in the inside pocket of his coat, which had been hanging out in the wash house, but that he had not put the money there.

Two police officers, testifying for the State, stated that the defendant's general reputation for truth and morality was bad.

It is insisted by defendant that the information does not charge that the assault was felonious, nor

state what is meant by seventeen dollars, lawful money of the United States, of the value of seventeen dollars, and that the information is, therefore, fatally defective.

As to the first proposition, the information alleges that the defendant, in and upon one John Weak, "unlawfully and feloniously did make an assault," etc. Then follows the constituent facts necessary to be alleged in an information or indictment for robbery in the first degree.

As to the other contention, that "seventeen dollars lawful money of the United States, of the value of seventeen dollars," is too uncertain and indefinite, there is no merit in it. By section 2531, Revised Statutes 1899, it is especially provided that "in every indictment or information in which it shall be necessary to make any averment as to any money or any note, being or purporting to be made or issued by any bank incorporated by law, or made or issued by any law of the United States, it shall be sufficient to describe such money or note simply as money, without specifying any particular coin or note; and such allegation shall be sustained by proof of any amount of coin, or of any such note, although the particular species of coin of which such amount was composed, or the particular nature of such note, shall not be proved." Besides, it was held in State v. Burnett, 81 Mo. 119, in a prosecution under this same statute (then sec. 1817, R. S. 1879), that a description of money in an indictment which describes it as $500 of the "lawful money of the United States," was sufficient.

The point is also made that the information is fatally defective in charging robbery by putting in fear. Section 1893, Revised Statutes 1899, under which the information is drawn, provides that: "Every person who shall be convicted of feloniously taking the property of another from his person, or in

his presence, and against his will, by violence to his person, or by putting him in fear of some immediate injury to his person, shall be adjudged guilty of robbery in the first degree." While, under this statute, there are two ways by which robbery in the first degree may be committed, one by feloniously taking the property of another from his person, or in his presence and against his will, by violence to his person, and the other by putting him in fear of some immediate injury to his person (State v. Crowell, 149 Mo. 391), this information charges the offense in the conjunctive, that is, both by taking the money and property of the said John Weak from the person and against the will of the said John Weak, then and there, by force and violence to the person of the said John Weak, *and* by putting the said John Weak in fear of an immediate injury to his person, thus alleging the commission of the offense in both ways. There was, however, no objection taken to the information before trial, either by motion to quash, or to require the State to elect upon which charge it would proceed to trial.

In 1 Bishop's New Crim. Proc., sec. 586, it is said: "To repeat what was explained in another connection, if a statute makes criminal the doing of this, or that, mentioning several things disjunctively, there is but one offense, which may be committed in different ways; and in most instances all may be charged in a single count. But the conjunctive 'and' must ordinarily in the indictment take the place of 'or' in the statute, else it will be ill as being uncertain. And proof of the offense in any one of the ways will sustain the allegation. On the other hand, the indictment may equally well charge what comes within a single one or more classes, less than all, of the statute, and still it embraces the complete proportions of the forbidden wrong." [State v. Harroun, 199 Mo. l. c. 528.]

The allegations in the information with respect to

the manner in which the robbery was committed are not repugnant because they relate to the same robbery, while alleging that it was done in different ways. It would have been better pleading, however, if the different allegations as to the manner in which the offense was committed had been stated in different counts.

The objection to the information seems to have been raised for the first time in the motion in arrest, which was then too late. Nor is the objection lodged against it of a character such as can be raised for the first time in this court. By his failure to move against it in the trial court by motion to quash, or by demurrer, or by motion to compel the State to elect upon which of the charges it would proceed to trial before the trial began, the defendant waived the objection. [State v. Fox, 148 Mo. 517; State v. Wilson, 143 Mo. 334; State v. Nagel, 136 Mo. 45.]

Of the instructions given in behalf of the State only one, the first, is complained of. It is as follows:

"The court instructs the jury that if you find and believe from the evidence that at any time within three years next before the 24th day of September, 1906, the date of the filing of the information, at Jackson county, State of Missouri, the defendant, Edward Calvert, took and carried away any money or property described in the information, the property of John Weak, of any value, from his person or in his presence and against his will, by force and violence to his person, by putting him in fear of an immediate injury to his person, without any honest claim to such money or property on the part of defendant, and with the intent to deprive said John Weak of his ownership therein and convert the same to his own use, then you will find the defendant guilty of robbery in the first degree, and assess his punishment at imprisonment in the State penitentiary for any term not less than five years."

This instruction is challenged upon the ground that

it applies to a crime not charged in the information, that is, that defendant "took and carried away money or property from the person of John Weak or in his presence and against his will by putting him in fear," while the offense charged in the information is the taking, feloniously, of the money and property of John Weak from his person and against the will of the said John Weak, then and there, by force and violence to his person and by putting him in fear of an immediate injury to his person; the State thus assuming the burden of showing that the robbery was committed in both ways, when all that was necessary for it to show, to entitle it to a conviction, was that the defendant committed the robbery in one of the two ways indicated by the statute. The defendant, certainly, has no right to complain of this instruction, because, if erroneous, the error was in his favor, and not prejudicial to him.

The evidence, taken all together, strongly tended to prove defendant's guilt, and left no room for a reasonable doubt with respect thereto. If true, as the jury evidently believed it to be, it amply supported and justified the verdict.

Finding no reversible error in the record, the judgment is affirmed.

All concur.